# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 21, 2015 Session

## STATE OF TENNESSEE v. BILLY RAY ALLEN

**Appeal from the Criminal Court for Sullivan County**
**No. S55,024    R. Jerry Beck, Judge**

---

**No. E2014-00967-CCA-R3-CD - Filed March 20, 2015**

---

The Defendant, Billy Ray Allen, was convicted by a Sullivan County Criminal Court jury of facilitation of possession with the intent to sell or to deliver twenty-six grams or more of cocaine, a Class C felony. *See* T.C.A. §§ 39-17-417(a)(4) (2010) (amended 2012, 2014) (possession with intent to sell and to deliver); 39-11-403(a) (2014) (facilitation). The trial court sentenced the Defendant as a Range II, multiple offender to six years' confinement. In this delayed appeal, the Defendant contends that the evidence is insufficient to support his conviction. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gene G. Scott, Jr. (motion for new trial & on appeal), Jonesborough, Tennessee, and Richard A. Spivey (at trial), Kingsport, Tennessee, for the appellant, Billy Ray Allen.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Barry P. Staubus, District Attorney General; and James F. Goodwin and Adam Moore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to the seizure of twenty-six grams or more of crack cocaine during the search of an apartment. At the trial, Kingsport Police Corporal Timothy Horne testified that on March 21, 2007, at 11:00 p.m., he received information that led him, Sergeant Crawford, Detective Summey, and Detective Ferguson to respond to Aspen Ridge Apartments. All of the officers traveled together in an unmarked vehicle and wore civilian clothes and gear identifying them as police officers. As Sergeant Crawford drove into the

apartment complex, Corporal Horne saw a person whom he later identified as Russell Malone, who froze when Corporal Horne made eye contact with him. Corporal Horne said Mr. Malone turned, stared at the officers and then at the ground, turned, and walked between two apartment buildings. Corporal Horne temporarily lost sight of Mr. Malone as the officers continued to drive through the complex. Detectives Summey and Ferguson got out of the vehicle, and Corporal Horne and Sergeant Crawford drove to the lower level of the complex to look for Mr. Malone.

Corporal Horne testified that he and Sergeant Crawford found Mr. Malone standing at the corner of building A, adjacent to apartment A4. Detectives Summey and Ferguson arrived shortly thereafter. As the officers talked to Mr. Malone, Lakisha Johnson arrived in a Ford Taurus, got out of her car, and walked to where the officers and Mr. Malone were talking. They were less than 30' from the front door of apartment A4. The officers learned that Ms. Johnson was staying in apartment A4, and they asked permission to search it. Corporal Horne said that Ms. Johnson consented to a search, that she had keys to the apartment, and that Mr. Malone did not have keys. He said that the Defendant was inside the apartment lying on a bed when everyone entered for the search. Corporal Horne did not see anyone enter or leave the apartment while they were talking outside. He also did not see any lights or hear any noises coming from inside the apartment.

Corporal Horne testified that when he first saw the Defendant, the bed was made, a cell phone was beside the Defendant, and the Defendant did not appear to have been sleeping. The Defendant told Corporal Horne that he lived in apartment K1, which was about 100' from apartment A4. Corporal Horne said that during their conversation, the Defendant suggested the police search apartment K1 and that the officers requested and obtained the Defendant's consent before a search of apartment K1 was conducted. When the police searched apartment K1, they found $405 in cash in a sweatshirt hood inside a closet. Corporal Horne said apartment K1 was fully furnished.

Corporal Horne testified that the Defendant said he was from Arkansas and had lived in Kingsport for about one year. When the Defendant was asked why he was inside apartment A4, he said that he had helped Ms. Johnson move into the apartment earlier that day. The Defendant said he was a truck driver and had driven to Kingsport from Arkansas for work before helping Ms. Johnson move. The Defendant said he was lying on the bed because he was tired from the drive and from unloading Ms. Johnson's belongings. The Defendant did not tell Corporal Horne how long he had worked as a truck driver but said he usually drove for one week and returned home for one week. Corporal Horne did not see an eighteen-wheel truck parked at the apartment complex.

Corporal Horne testified that during the search of apartment A4, Detective Summey found a sock containing crack cocaine inside the toilet tank. The Defendant, Mr. Malone, and Ms. Johnson were arrested.

Corporal Horne testified that on March 21, 2007, he had worked in the vice and narcotics unit for three years and that he learned a common way to package cocaine possessed for sale or delivery was to break down a large rock of crack cocaine into smaller sizes, ranging from one-half gram to an "eight ball." He said one gram of cocaine sold for about $100, depending upon demand and the purity level. He said 28.35 grams was equivalent to one ounce.

On cross-examination, Corporal Horne testified that Sergeant Crawford knocked on the door of apartment A4 before everyone entered. He agreed the Defendant wanted the officers to search his apartment. When asked what he meant by his testimony that the $405 was hidden, he said the money was not accessible, "[n]ot in a bank," and "not somewhere you could run and access it." He agreed no drugs were found on the Defendant and said the Defendant's hands were not wet when he was handcuffed.

On redirect examination, Corporal Horne testified that he did not know how long the Defendant had been inside apartment A4. The officers, Mr. Malone, and Ms. Johnson talked outside the apartment for about ten to fifteen minutes before they entered for the search. Corporal Horne did not know what the Defendant did during that time. On recross-examination, he stated that the front door was the apartment's only exterior door.

Lakisha Johnson testified that she knew Mr. Malone through Kevin Allen, her former boyfriend and the Defendant's brother. She met the Defendant in 2005 or 2006, but she did not know him well. She said that around March 21, 2007, the Defendant and his brother traveled to Arkansas to visit their mother. Although she denied living with the Defendant after her relationship with the Defendant's brother ended, she said the Defendant stored some of her belongings in his garage at the apartment complex.

Ms. Johnson testified that she moved to Kingsport when she was dating the Defendant's brother and that they lived next door to the Defendant. She did not know if anyone lived with the Defendant. She said the Defendant mentioned to her that he was a truck driver, but she denied seeing the Defendant drive a truck at the apartment complex.

Ms. Johnson testified that on March 21, 2007, she began renting apartment A4 and that she obtained the keys to the apartment around "noon or evening" that day. She said the Defendant paid for the deposit in cash, although she intended to reimburse the Defendant. She had only moved her clothes and television into the apartment when the officers arrived

that night. She said that after she obtained the keys, she saw a woman near apartment A4 and that the woman was moving out. Ms. Johnson never saw the woman again.

Ms. Johnson testified that the Defendant helped her find the apartment because she and her daughter needed a place to live and because she was unfamiliar with Kingsport. She did not know if anyone was inside her apartment on the day she obtained the keys but said the Defendant and Mr. Malone helped her move. She said the Defendant and Mr. Malone moved her belongings that were stored in the Defendant's apartment. She said they made one trip to her apartment from the Defendant's apartment. Although she did not recall when they made the trip, she said it was still daylight. She said that when she later arrived at her apartment, she saw Mr. Malone outside talking to several police officers.

Ms. Johnson testified that she told the police officers outside her apartment that she was staying at apartment A4 and that she had keys. Corporal Horne requested her consent to search the apartment, and Ms. Johnson consented because she did not have anything illegal inside. She denied knowing drugs were inside the apartment. The Defendant was inside her apartment when the police entered. She cried when the officers found the drugs in the toilet tank because she knew she was a suspect, although the drugs did not belong to her. Ms. Johnson received probation related to this case.

On cross-examination, Ms. Johnson testified that although she did not know about the drugs, she pleaded guilty to a crime because her attorney advised her a conviction was likely because the apartment was leased to her. She agreed she did not see the Defendant place drugs in the toilet tank.

Kingsport Police Sergeant Tim Crawford testified that on March 21, 2007, he worked in the vice and narcotics unit and responded to Aspen Ridge Apartments with Corporal Horne and Detectives Ferguson and Summey. He provided similar testimony regarding their arrival at the apartment complex and coming into contact with Mr. Malone and Ms. Johnson. Mr. Malone told Sergeant Crawford that he had been staying with the Defendant in apartment K1 but that he was "going back to A4." Mr. Malone did not have keys to apartment A4.

Sergeant Crawford testified that nobody entered or left apartment A4 while he and the other officers spoke to Mr. Malone and Ms. Johnson. He did not see any lights or hear any noises coming from the apartment. Ms. Johnson said she rented the apartment, gave him the apartment keys, and consented to a search. He unlocked the doorknob and the deadbolt. He said the Defendant was lying on the apartment's only bed. The bed was made, and the Defendant was lying on top of the bedspread. The Defendant sat up, and Sergeant Crawford said the Defendant did not appear startled or sleepy. The Defendant did not ask why the

officers were there. Sergeant Crawford did not ask the Defendant why he was there. Detective Summey found the crack cocaine.

Sergeant Crawford testified that the Defendant said he lived in apartment K1 and that he was an "over-the-road truck driver." He did not see any eighteen-wheel trucks in the parking lot. He said that after the cocaine was found, the Defendant and Mr. Malone were transported to the jail by Officer Wayt. Officer Wayt's police cruiser had video and audio recording equipment.

On cross-examination, Sergeant Crawford testified that to his knowledge, the Defendant did not have any drugs or a key to apartment A4 in his possession. He was not present when Mr. Malone stated that the drugs were his and that the Defendant and Ms. Johnson "had nothing to do with it."

Kingsport Police Detective Steve Summey testified that on March 21, 2007, he worked in the vice and narcotics unit and responded to Aspen Ridge Apartments with the other officers. He provided similar testimony regarding their arrival at the apartment complex and contact with Mr. Malone and Ms. Johnson. Detective Summey said that Sergeant Crawford talked to Mr. Malone and asked who lived in apartment A4. During the exchange, Ms. Johnson arrived, and Mr. Malone indicated that Ms. Johnson lived in the apartment.

Detective Summey testified that Ms. Johnson consented to a search of apartment A4, produced the keys, and gave them to Sergeant Crawford. He said the Defendant was inside the apartment lying on a bed. The Defendant sat up when the officers entered the apartment and did not ask why the officers were there. Detective Summey did not speak to the Defendant, but he assisted in the search. He found a sock floating inside the toilet tank, grabbed it, and felt what he thought were rocks of crack cocaine inside a plastic bag. Inside the sock he found four large plastic bags containing several individual crack cocaine rocks wrapped in smaller plastic bags. He said that based on his training and experience, the packaging was indicative of "the sale of crack cocaine." He said that usually a small bag contained "a 20 rock" of crack cocaine worth $20 and that usually 0.5 gram of crack cocaine sold for $50. Detective Summey said he had found drugs hidden inside a toilet tank in other investigations.

Detective Summey testified that he left the bathroom without the crack cocaine and walked toward the Defendant without speaking to anyone. He said the Defendant looked down, shook his head, looked toward Ms. Johnson, and shook his head again. He said the Defendant, Mr. Malone, and Ms. Johnson were arrested. No fingerprint analyses were conducted on the plastic bags because they had been in the water.

On cross-examination, Detective Summey testified that when the officers first arrived at the apartment complex, he thought Mr. Malone attempted to get away from the officers. Detective Summey did not search the Defendant and was unaware if drugs were found on the Defendant. He said that the Defendant's shaking his head and looking at Ms. Johnson led him to conclude that the Defendant realized he was "caught." He admitted, though, that he did not know the Defendant's thoughts when the Defendant shook his head. Relative to the sock, he could not recall if it was a man's or a woman's sock, but after looking at it, he said it was a small ankle sock. He knew Mr. Malone pleaded guilty before the Defendant's trial, claimed ownership of the drugs, and claimed the Defendant and Ms. Johnson had nothing to do with the drugs.

On redirect examination, Detective Summey testified that nothing about the sock indicated it belonged to a woman and that he did not "find a match" for the sock. On recross-examination, he stated that he did not look for a match.

Kingsport Police Detective Cliff Ferguson testified that he responded to Aspen Ridge Apartments on March 21, 2007. The Defendant was lying on the bed when he entered apartment A4. He did not speak to the Defendant during the search but said the Defendant did not appear startled by the officers' entering the apartment. He agreed, though, that he did not ask the Defendant what he was doing inside the apartment.

Tennessee Bureau of Investigation (TBI) Special Agent Jacob White, an expert in drug identification and controlled substances, testified that he analyzed the rock-like substances. Two large Ziploc bags were submitted for analysis. Each bag contained four smaller plastic bags, which in turn contained several smaller "corner" plastic bags with rock-like substances inside. He only analyzed the contents of one large Ziploc bag. Inside the four smaller plastic bags, he found 100, 56, 99, and 100 corner plastic bags respectively. The weight of the rock-like substances from 80 of the corner plastic bags was 27.5 grams. He said that the gross weight of the remaining rock-like substances he did not analyze was 189.6 grams. He concluded that the 27.5 grams he analyzed contained cocaine base.

On cross-examination, Agent White testified that he did not perform fingerprint analyses on the plastic bags and that fingerprint analysis was not requested. He agreed that the evidence was submitted for analysis on April 3, 2007, but that he did not perform his analyses until April 6, 2009.

Kingsport Police Officer Thomas Wayt, Jr., testified that on March 21, 2007, he responded to Aspen Ridge Apartments but that he did not speak with anyone or collect evidence. He said, though, that he transported the Defendant and Mr. Malone to the jail. He searched Mr. Malone before placing him inside the police cruiser and said he found a crack

pipe and a plastic bag with a torn corner inside Mr. Malone's pants pockets. The Defendant was placed inside the same police cruiser, and Officer Wayt found no evidence on the Defendant before placing him inside the cruiser. Officer Wayt said that after they arrived at the jail, he found Mr. Malone holding a plastic bag containing a cream-colored rock, which he believed was crack cocaine.

Officer Wayt testified that the police cruiser had audio and video recording equipment and that he manually activated the recording system before Mr. Malone and the Defendant were placed inside. The recording was played for the jury.

In the recording, Mr. Malone was placed inside the police cruiser and began to move around in his seat. After the Defendant was placed inside the cruiser, the men talked. Although the majority of the Defendant and Mr. Malone's conversation was inaudible, the Defendant told Mr. Malone that he would get Mr. Malone an attorney and pay any bond and fines Mr. Malone incurred. The Defendant told Mr. Malone that the Defendant would do whatever it took to get him out of jail and that all Mr. Malone had to do was "get [him] clear of this s---." The Defendant said it was Mr. Malone's fault anyway. The Defendant stated that he "tried to call her on the phone and tell her she didn't have . . . keys to the d--- thing." The Defendant told Mr. Malone that the police had to release him and Mr. Malone. The Defendant directed Mr. Malone to tell the police that Mr. Malone was helping Ms. Johnson move, that Mr. Malone just returned with "the s---," that Mr. Malone did not want to lose it, and that Mr. Malone put it in the toilet tank. The Defendant told Mr. Malone to tell the police that he thought the Defendant was gone from the apartment and did not know the Defendant was inside. The Defendant asked if Mr. Malone saw the police officers when they arrived, and Mr. Malone shook his head from side to side. They discussed the police officers' entering the apartment complex and their finding Mr. Malone. The Defendant said that he saw the police enter the apartment and that Ms. Johnson should never have opened the door. The Defendant said he attempted to stall the officers by taking them to his apartment. The Defendant stated that the police had to set Mr. Malone's bond that night.

On cross-examination, Officer Wayt testified that he did not enter apartment A4. He said that although he could not determine what Mr. Malone was doing inside the police cruiser before the Defendant was placed inside, Mr. Malone appeared to reach for something in his buttocks area. He agreed that Mr. Malone had crack cocaine in his hand when they arrived at the jail and that the Defendant did not possess any drugs.

Russell Malone testified for the defense that he was incarcerated at the time of the trial for possession of drugs. He stated that he placed the drugs inside the toilet without the Defendant's knowledge. He said the Defendant did not give him the crack cocaine or have

anything to do with the drugs. He agreed that he told Detective Horne that the drugs were his and that the Defendant had no knowledge of the drugs.

On cross-examination, Mr. Malone testified that he had known the Defendant for about two years at the time of his arrest and that they were acquaintances. He denied living with the Defendant but said he showered at the Defendant's apartment. He lived with his girlfriend but said he told the arresting officers that he stayed with the Defendant. Mr. Malone was originally from Arkansas but had lived in Kingsport for about three or four years at the time of his arrest. He said the Defendant paid the rent and the utilities for apartment K1. Mr. Malone agreed he did not have a lot of money at the time of his arrest but said he had a 1991 Chevy. He said that on the day of his arrest, he had returned from Arkansas with the Defendant. Mr. Malone denied the purpose of the trip was to obtain crack cocaine and said the Defendant "had business" in Arkansas. Mr. Malone said he visited his family, and he and the Defendant separated while in Arkansas. He did not ask the Defendant about his reason for traveling to Arkansas.

Mr. Malone testified that the Defendant drove the Defendant's vehicle to Arkansas while Mr. Malone's vehicle remained in the parking lot at the apartment complex. He said most of the drugs found inside apartment A4 were bought in Kingsport. Although he admitted he told the arresting officers that he went to Arkansas and returned with crack cocaine, he said it was irrelevant to "that particular incident that day." He admitted to storing five ounces, or 147 grams, of crack cocaine inside the toilet tank. He said that the drugs were valued at $100 per gram and that he knew the value because he had purchased cocaine previously.

Mr. Malone testified that he placed the cocaine inside the toilet tank before the Defendant arrived at Ms. Johnson's apartment. Although Mr. Malone denied knowing Ms. Johnson, he agreed he stored the cocaine inside her apartment. He said, "The purpose of it – me putting it there was not to – to leave – to be stored there." He said he placed the drugs in the toilet after wrapping them in plastic on the day of his arrest. When asked if he placed the drugs in a sock before putting them in the toilet tank, he said, "Again, it was in plastic." He admitted using drugs and intending to sell the cocaine from apartment A4. He agreed cocaine was usually sold in small plastic bags.

Mr. Malone testified that the Defendant knew Ms. Johnson and that she asked Mr. Malone to help her move her belongings into apartment A4. He said he was inside the apartment because he helped Ms. Johnson move her belongings. He denied the Defendant moved her belongings. He said Ms. Johnson left to run errands and left the apartment door unlocked. He did not have keys to the apartment. Mr. Malone placed the drugs inside Ms. Johnson's apartment while she was gone. He said he returned to the Defendant's apartment

and waited for someone to call him and provide instructions about delivery of the drugs. He denied he intended to leave the cocaine inside Ms. Johnson's apartment.

Mr. Malone testified that although he told the officers he was unemployed at the time of his arrest, he worked at the Defendant's carwash. He denied that the drugs belonged to the Defendant and that the Defendant placed the drugs inside the toilet tank. He denied he would have stored the drugs at his girlfriend's house if the drugs were his. He agreed he left the apartment to throw out the garbage and said he might have locked the door accidentally. He agreed, though, that he could not have locked the deadbolt when he left the apartment. The Defendant was inside the apartment waiting for Ms. Johnson to return when he left to take out the garbage. Mr. Malone said the Defendant was awake when he left.

Mr. Malone testified that he was gone for about five minutes, that he saw the officers when he was outside, and that he became nervous when he saw them. He said the officers stopped him outside Ms. Johnson's apartment. Ms. Johnson arrived while he talked to the officers, and he said Ms. Johnson consented to a search. He did not know if the officers unlocked both locks but knew the officers used a key.

Mr. Malone testified that although he did not recall a lengthy conversation with the Defendant in the back of the police cruiser, he recalled apologizing to the Defendant for involving the Defendant. He did not recall the Defendant's stating that the Defendant would pay his bond or that the Defendant blamed him for the arrests. He said his bond was later reduced to $4000 and said his family, not the Defendant, paid it.

Upon this evidence, the Defendant was convicted of facilitation of possession with the intent to sell or to deliver or to sell twenty-six grams or more of cocaine. The trial court sentenced him to six years' confinement. This appeal followed.

The Defendant contends that the evidence is insufficient to support his conviction. He argues that the evidence only shows that he was present at Ms. Johnson's apartment when the officers found the drugs. The State responds that the evidence sufficiently shows that the Defendant participated in the offense to the extent necessary to support his conviction. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate

courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

It is a crime to "[p]ossess a controlled substance with intent to . . . deliver or sell [a] controlled substance." T.C.A. § 39-17-417(a)(4). Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id*. § 39-17-402(6) (2014). A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of a controlled substance. *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Possession of cocaine with the intent to sell or to deliver is a Class B felony "if the amount involved is point five (0.5) grams or more[.]" T.C.A. § 39-17-417(c)(1) (2010) (amended 2012, 2014). "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility . . . , the person knowingly furnishes substantial assistance in the commission of the felony." *Id*. § 39-11-403(a).

In the light most favorable to the State, the evidence reflects that the Defendant paid the deposit for Ms. Johnson's apartment and that the Defendant was inside Ms. Johnson's apartment when the crack cocaine was found. The drugs were individually packaged, and Corporal Horne and Detective Summey testified that the packaging was indicative of intent to sell or to deliver crack cocaine. Although the Defendant was inside the apartment while the officers, Mr. Malone, and Ms. Johnson spoke outside the apartment, none of the officers saw any lights or heard any noises inside the apartment. The deadbolt lock on the front door, which was the only exterior door, was locked when the officers, Mr. Malone, and Ms. Johnson entered the apartment for the search. In the recording, the Defendant told Mr. Malone that he saw the police officers enter the apartment, and the officers testified that the Defendant did not appear as though he had been sleeping.

After the crack cocaine was found and Detective Summey approached the Defendant, the Defendant looked down, shook his head, looked toward Ms. Johnson, and shook his head again. We note that although Mr. Malone claimed responsibility for the drugs and testified that the drugs were only contained in a plastic bag, the drugs were found inside a sock

containing the plastic bag. This shows that Mr. Malone had no knowledge about the sock and implies that Mr. Malone might not have placed the drugs in the toilet tank. We also note that Mr. Malone testified that the Defendant had driven him to Arkansas and that they had returned earlier that day. The Defendant blamed Mr. Malone for their arrests in the recording, but he told Mr. Malone that he would obtain counsel for Mr. Malone and pay any fines and bond Mr. Malone incurred. The Defendant told Mr. Malone that he would do what it took to get Mr. Malone out of jail and that Mr. Malone only had to "get [him] clear of this s---." The Defendant also told Mr. Malone to tell the police officers that Mr. Malone helped Ms. Johnson move, that Mr. Malone had recently returned with "the s---," that Mr. Malone did not want to lose it, and that Mr. Malone placed the drugs inside the toilet tank. The Defendant instructed Mr. Malone to tell the police that he did not know the Defendant was inside the apartment. The Defendant admitted that he saw the police officers and that he attempted to stall by allowing the officer to search his apartment. Although Mr. Malone accepted responsibility for the crack cocaine and claimed the Defendant had no knowledge the drugs were inside Ms. Johnson's apartment, the Defendant's statements in the recording reflect otherwise. The jury's verdict reflects that it discredited Mr. Malone's testimony. *See Bland*, 958 S.W.2d at 659. We conclude that the evidence is sufficient to support the Defendant's conviction for facilitation of possession with the intent to sell or to deliver twenty-six grams ore more of cocaine. He is not entitled to relief on this basis.

The judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-11-