IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2017

## STATE OF TENNESSEE v. DEMARCUS LASHAWN BLACKMAN

**Appeal from the Circuit Court for Marshall County**
No. 15-CR-132       F. Lee Russell, Judge

_____

## No. M2016-01098-CCA-R3-CD

_____

The Defendant, Demarcus Lashawn Blackmun, was indicted by a Marshall County grand jury for the sale and delivery of .5 grams or more of cocaine in violation of Tennessee Code Annotated sections 39-17-417(a)(2) and (3) (2010). He was later convicted by a jury as charged. Following a sentencing hearing, the trial court merged the convictions and imposed twelve years' incarceration. In this appeal as of right, the Defendant argues that the evidence is insufficient to support his convictions and that the trial court abused its discretion in imposing its sentence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT W. WEDEMEYER, JJ., joined.

Michael J. Collins, Assistant Public Defender (at trial and on appeal) and William J. Russell, District Public Defender (at trial), Shelbyville, Tennessee, for the Defendant-Appellant, Demarcus Lashawn Blackman.

Herbert H. Slatery III, Attorney General and Reporter; Alexander C. Vey, Assistant Attorney General; Robert J. Carter, District Attorney General; Weakley E. Barnard, Assistant District Attorney General; and Felicia Walkup, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

The two day trial in this case occurred on February 22 and 23, 2016. Jessie Prater, a confidential informant, testified that he had prior convictions for aggravated burglary and attempted robbery. He was working for the Drug Task Force (DTF) and receiving $100 per case. He admitted that he previously stole money from the DTF, was immediately caught, and returned the money. On December 23, 2014, the day of the

offense, Prater arranged to buy cocaine from the Defendant, who he knew as "Gucci." Around 5 p.m. that afternoon, along with DTF agents Tim Miller and Joe Ramirez, Prater went to the back of a Napa Auto Parts store in Lewisburg County, Tennessee to arrange the drug purchase from the Defendant. Prater already had the Defendant's cell phone number and called him to discuss where the drug purchase was to take place. Three audio recordings of the telephone conversations between Prater and the Defendant were admitted into evidence and played for the jury. Prater identified Defendant's voice on each of the recordings. He also identified the Defendant in court as the person from whom he purchased the drugs.

Prater arranged to purchase a gram of powder cocaine for $100 from the Defendant. After the phone call, Prater and Agent Ramirez left the store. Agent Ramirez searched Prater to ensure that he did not have any money or illegal drugs on his person. Prior to leaving, Agent Ramirez provided Prater with a digital recorder and five $20 bills, totaling $100, for the purpose of buying the drugs. They proceeded to Summit Apartments. Upon arrival, they pulled to the back of the apartments and waited. The Defendant walked out of a building, and Prater approached him and gave him the money. Prater testified that the Defendant then gave him the powder cocaine. Prater went back to the truck and gave Agent Ramirez the drugs. Prater said that the Defendant was with a white female. Prater told the agents that the woman "looked like a girl [he] knew named Jennifer Bryant." She was later determined to be Heather Rodriguez. He later clarified that he did not misidentify the girl, but told agents the wrong name.

Following the drug transaction, Prater observed the Defendant put the money in his pocket. Prater was searched before and after the drug transaction. He received $100 that day for assisting the DTF with the drug transaction.

Jose Rameriz, a sheriff's deputy with the Marshall County Sheriff's Department, testified that he was assigned to the DTF at the time of the instant offense. He worked with Jesse Prater as a confidential informant in this case. His testimony was consistent with the testimony of Prater. He drove Prater to purchase the drugs and described the search of Prater before and after the drug transaction. He said that Prater was within his sight the entire time during the drug transaction. The money he gave to Prater was pre-recorded for the purpose of a controlled buy. He observed Prater touch hands with the individual involved with the transaction. He recovered the drugs from Prater, placed them in a sealed evidence envelope, and turned them over to Director Tim Miller of the DTF. The envelope containing the drugs was admitted into evidence at trial as Exhibit 2. Deputy Rameriz said that the drugs had been confirmed to be cocaine by an independent lab. He was unable to identify the person involved in the drug transaction with Prater.

Timothy Lane, Director of the DTF, testified that he was the evidence custodian for the DTF. He was responsible for all the evidence collected in the field by other DTF officers. He said he controlled the only set of keys for the evidence room. He identified Exhibit 2 as the evidence turned in to him by Deputy Rameriz. He said that the evidence was then turned in to the Tennessee Bureau of Investigations (TBI) for analysis. After it was analyzed, he picked it up and brought it to court.

Timothy Miller, Assistant Director of the DTF, testified that he supervised the officers involved in the instant controlled drug transaction. He was at the Napa Auto store prior to the drug transaction and was familiar with Prater. He was also responsible for ensuring that the phone calls between Prater and the Defendant were recorded. He otherwise testified consistently with Prater and Ramirez as to the events surrounding the controlled drug buy from the Defendant. He observed a hand-to-hand exchange between Prater and the individual, later identified as the Defendant. After the drug transaction was completed, he called another agent to stop the car the Defendant was riding in as a passenger. A white female was driving the car. The car was followed and did not make any stops between the location of the drug transaction and the location of the traffic stop. Miller identified the Defendant at trial as the front seat passenger of the car driven by the white female.

Jennifer Sullivan with the TBI crime laboratory testified that she analyzed the drugs admitted into evidence as Exhibit 2. She said that the substance contained .5 grams of cocaine. Her laboratory report was admitted into evidence as Exhibit 3.

Shane George was on assignment from the Shelbyville Police Department with the DTF at the time of the offense. He was at the Napa store and the location of the offense. He assisted in the investigation by following Agent Ramirez. He observed the Defendant and the white female get into their car after the drug transaction. As their car left the offense location, Deputy George followed it. He observed their car the entire time and said it did not make any stops between the offense location and the location of the traffic stop. He identified the Defendant in court as the passenger in the car. On cross-examination, he said he observed the other officers conduct the traffic stop and did not see any drugs recovered from the car. He knew money was recovered from the car but did not know specifics about it.

Officer Shawn Crawford of the Lewisburg City Police Department testified that he was on patrol with his canine deputy, Ivan, on the night of the offense. He was notified of the situation by Assistant Director Miller and given a description of the subject car. When the car did not come to a complete stop at a stop sign, he conducted a traffic stop. Upon stopping the car, he determined that it was driven by Heather Rodriguez and the Defendant was the front seat passenger. As he spoke with the driver, another officer

spoke with the Defendant. Officer Crawford walked Ivan around the car. Officer Crawford said that Ivan alerted on the car, which meant that he smelled the odor of an illegal narcotic drug. On cross-examination, Officer Crawford agreed that he did not find any drugs after searching the car or on the person of the Defendant. The Defendant and Rodriguez were allowed to leave.

Officer Brad Martin of the Lewisburg City Police Department testified consistently with the testimony of Officer Crawford. In addition, he testified that he searched the Defendant during the traffic stop and discovered five twenty-dollar bills on his person. On cross-examination, he agreed that an additional $1300 was found in the car. He also agreed that it was not unusual to find this amount of money so close to Christmas. He did not check the serial numbers of the money found.

Based on the above proof, the Defendant was convicted as charged. The trial court merged count two (delivery) into count one (sale) and imposed a twelve year sentence. A motion for new trial was subsequently denied, and this timely appeal followed.

## Analysis

The Defendant challenges the sufficiency of the evidence and specifically argues that the Drug Task Force did not see him "hand Prater the drugs;" and did not "thoroughly search Prater" prior to the drug transaction. In addition, the Defendant argues that the evidence supporting his conviction is insufficient because it was based on the testimony of Prater, a thief and a convicted felon. The State argues, and we agree, that the evidence is more than sufficient to support the conviction in this case.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). When a defendant challenges the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Similarly, Rule 13(e) of the Tennessee Rules of Appellate Procedure states, "Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact. Id.

Although the trial court merged the Defendant's convictions for sale and delivery of cocaine, we will consider the sufficiency of the evidence as to both convictions in order to facilitate further potential appellate review. In Tennessee, "[i]t is an offense for a defendant to knowingly ... [d]eliver a controlled substance[ ][or][s]ell a controlled substance." T.C.A. § 39-17-417(a)(2),(3) (2010). Tennessee law defines "deliver" as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." T.C.A. § 39-17-402(6) (2010). Cocaine is classified as a Schedule II drug, see T.C.A. § 39-17-408(b)(4) (2010), and sale or delivery of less than 0.5 grams of cocaine is a Class C felony. See T.C.A. § 39-17-417(c)(2)(A); see e.g. State v. Ernest Jackson, No. W2013-00348-CCA-R3-CD, 2014 WL 72275, at *4 (Tenn. Crim. App. Jan. 9, 2014).

Upon our review, the record shows that Prater called the Defendant and arranged to purchase some drugs from him. There were several phone calls between the Defendant and Prater, all of which were admitted into evidence and played for the jury. Prater identified the other voice on the recording as the Defendant's at trial. One of the recordings details where the drug transaction was to take place. In another recording, a voice can be heard saying "it's a hundred" and "it's that soft stuff…that good stuff." In response, another voice replies, "[M]an, you talking too much." Prater was provided with 5 pre-marked $20 bills prior to the drug transaction. He was also equipped with a recorder and monitored by DTF agents from the beginning to the end of the transaction. Prater testified that he gave the Defendant the same money in exchange for the drugs. He also observed a white female, later identified as Rodriguez, with the Defendant during the transaction. The Defendant was observed getting into Rodriguez's car and leaving the location of the drug transaction. Prater gave the drugs he received from the Defendant,

- 5 -

which later tested positive for more than .5 grams of cocaine, to the DTF Agents. During a traffic stop of Rodriguez's car, the Defendant had the same amount of money in the same denominations as Prater gave to him in the drug transaction. Viewed in the light most favorable to the State, a rational juror could have found that the Defendant knowingly sold and delivered more than .5 grams of cocaine to Prater. He is not entitled to relief.

**Sentencing.** The Defendant next argues that his sentence is excessive. He specifically contends that the maximum sentence is not justified based on the facts of this case. He insists that the imposition of the maximum sentence was improper because he had no prior felony convictions and that "scarce prison resources" demand a less harsh punishment. The State counters that the trial court properly imposed sentence in this case.

We review the length and manner of service of a sentence imposed by the trial court under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). Upon imposing a sentence, a trial court must consider the following: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in § 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b)(1)-(7). The defendant has the burden of showing the impropriety of the sentence on appeal. Id. § 40-35-401(d), Sentencing Comm'n Cmts.

In determining the proper sentence, the trial court must consider the defendant's potential for rehabilitation or treatment. Id. § 40-35-102(3)(C) and 40-35-103(5). In addition, the court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. § 40-35-103(2), (4).

As an initial matter, the Defendant was required to be sentenced as a Range I, standard offender subject to a sentencing range of eight to twelve years. Accordingly, the trial court's twelve-year sentence was within the applicable statutory range and presumed reasonable. Id. § 40-35-112(c)(1). In determining the appropriate length of the Defendant's sentence, the trial court applied three enhancement factors. On appeal, the Defendant challenges the trial court's application of enhancement factors (1), (8), (13). See id. § 40-35-114.

The trial court engaged in an exhaustive analysis in sentencing the Defendant in this case and stated as follows:

And I will look, make inquiry, as to whether or not there are any enhancing factors present. I specifically find under 40-35-114, that he had, factor number 1 is present, and that's his previous history of criminal convictions. We would not include the misdemeanor failure to appear from '16. It occurred after this event occurred. I believe our event here is December 23, 2016.

So he had a driving on revoked conviction and simple possession in 2014. He had a misdemeanor failure to appear and two casual exchanges in 2013. In 2010, he had a disposition of raw sewage, which quite frankly, I do not consider that in any significant way here. But in 2009, he had a simple possession. In 2008, an assault. In 2007, another misdemeanor failure to appear and another simple possession. In 2006, he had a possession of a firearm, for the purpose of going armed, a simple possession, and a reckless driving. So, based upon that extensive misdemeanor record, I find that enhancing factor 1 is present. I also find that enhancing factor 8 is present, a failure to comply with a condition of release into the community. I would point out that he was revoked on two casual exchanges from 2013; revoked on the raw sewage from 2010; on the simple possession in 2009, revoked twice; the assault in 2008, he was also revoked. So, I find that factor to be present. Let's see, I find factor 13 to be present, because he was on misdemeanor probation from the 2014 convictions, when he committed this crime on December the 23rd of 2014. So, that factor is present. So, all of these factors are present. I don't think there was a specific reference to a mitigating factor. It's not a violent crime, so I do find that that mitigating factor is present, but I don't give any, any weight at all under these particular circumstances. So, I am enhancing him from eight up to 12 years.

The trial court denied alternative sentencing reasoning as follows:

We're aware that there's a presumption in favor of alternative sentencing. I'm equally aware that some of the considerations under 40-35-103 are whether confinement is necessary to protect society from a defendant with a long criminal history. Another is the need to avoid depreciation of the seriousness of the offense or a situation where confinement is particularly suited to deter the crime involved. Number 3 would be or a third would be that measures less restrictive have frequently

or recently been tried. I'm well aware that under subsection 102, the purposes of the sentencing is that a just sentence be set in relation to the seriousness of the offense. I'm aware of fair predictability is the second factor. And finally, I'm aware that an effective general deterrent is maybe needed to restrain a defendant with a lengthy history or to encourage rehabilitation or to, yeah, to encourage rehabilitation. And I'm also aware that among the criteria set out in 40-35-103(5) is potential or lack of potential for rehabilitation including the risk to, that there will be crimes committed while the defendant is on probation, if he's given probation. In this particular case, as he said in his allocution, he has been given second chances and third chances and so forth. He does have, it appears, six, or at least five, but it appears to me that he's had six revocations when he was given breaks. It appears to me that he was, indeed, on probation for misdemeanor offenses when he committed this crime on December the 23rd, 2014. So, I think measures less restrictive have frequently and recently failed in this particular case, and I find that there's zero potential for rehabilitation in the absence of a to-serve sentence. So, respectfully, there won't be any alternative sentencing in this particular case.

In his brief, the Defendant argues that the enhancement of his sentence based on factors 1, 8, and 13 was an abuse of discretion. However, he fails to articulate or provide any reasoning in support of this argument. Based on our review of the record, we conclude that the trial court properly applied these factors. See T.C.A. § 40-35-114(1), -114(8), -114(13), -114(14). The Defendant did not object to the presentence report containing his prior convictions and multiple probation revocations. He conceded in his allocution that he had been given chances with probation but failed to take advantage of them. The Defendant's enhancement factors supported the maximum sentence of twelve years' imprisonment. After thoroughly analyzing the applicable enhancing and mitigating factors, the trial court considered the evidence presented at trial as well as the Defendant's presentence report. Because the record shows that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a twelve-year sentence, the Defendant has failed to either establish an abuse of discretion or otherwise overcome the presumption of reasonableness afforded sentences which are within the applicable range. The Defendant is not entitled to relief.

## CONCLUSION

Based on the foregoing reasoning and authority, we affirm the judgments of the trial court.

_____
CAMILLE R. McMULLEN, JUDGE