IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 16, 2018

## STATE OF TENNESSEE v. TEQUAN LAQUARIOUS EVANS

**Appeal from the Circuit Court for Montgomery County
Nos. CC-16-CR-1414, CC-16-CR-1415      William R. Goodman III, Judge**

_____

### No. M2017-02266-CCA-R3-CD

_____

The Defendant, Tequan Laquarious Evans, was convicted after a bench trial of possession with the intent to sell or to deliver not less than one-half ounce nor more than ten pounds of marijuana, a Class E felony, possession of a firearm with the intent to go armed during the commission of a dangerous felony, a Class D felony, possession of alprazolam, a Class A misdemeanor, possession of drug paraphernalia, a Class A misdemeanor, and escape, a Class A misdemeanor. *See* T.C.A. §§ 39-17-417(a)(4) (2018) (possession with intent to sell and to deliver), 39-17-1324(a) (2018) (unlawful possession of firearm), 39-17-418 (2018) (misdemeanor drug possession), 39-17-425 (possession of drug paraphernalia); 39-16-605 (2018) (escape). The trial court imposed sentences of one year at 30% service for possession with the intent to sell or to deliver, three years at 100% service for unlawful firearm possession, and eleven months, twenty-nine days at 75% service each for possession of Alprazolam, possession of drug paraphernalia, and escape. The court ordered consecutive service of the firearm and escape convictions, for an effective sentence of three years, eleven months, and twenty-nine days. The possession with the intent to sell or to deliver conviction was ordered to be served consecutively to a conviction in an unrelated case. On appeal, the Defendant contends that the evidence is insufficient to support his convictions for possession with the intent to sell or to deliver not less than one-half ounce nor more than ten pounds of marijuana and possession of a firearm with the intent to go armed during the commission of a dangerous felony. We affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and D. KELLY THOMAS, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Tequan Laquarious Evans.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; John W. Carney, Jr., District Attorney General; and Daniel Broller, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

This case relates to a police encounter which resulted in the discovery of approximately two ounces of marijuana inside a backpack possessed by the Defendant. At the trial, Clarksville Police Officer Justin Long testified that on August 26, 2016, he, Officer Spears, and Officer Houser were conducting "foot patrols" around an apartment complex, that he saw the Defendant and other people walking toward a white car parked near Building Two at the complex, and that he and the other officers walked toward the Defendant. Officer Long said that he smelled marijuana coming from the car and that he detained the Defendant. Officer Long said that he pulled off the Defendant's backpack and that the Defendant "pulled away" and ran to the rear of the complex. Officer Long clarified that he grabbed the Defendant's left arm to remove the backpack from the Defendant's shoulder and that the Defendant ran. Officer Long stated that he chased the Defendant and told him to stop, that the Defendant slipped during the chase, and that Officer Long caught up to the Defendant.

Officer Long testified that the Defendant reached "inside his pants" during the pursuit and that Officer Long grabbed the Defendant's arms and placed him in handcuffs. Officer Long said that he asked the Defendant whether he had a firearm, that the Defendant did not respond, and that Officer Long felt a gun under the Defendant's pants leg near the right knee. Officer Long identified the firearm from the Defendant's pants. A photograph of the firearm, magazine, and seven bullets removed from the firearm was received as an exhibit. Officer Long said that he searched the Defendant and found cash and a small bag containing a substance he believed to be marijuana. Officer Long placed the Defendant inside the police cruiser and returned to the white car. Officer Long said that Officer Spears searched the backpack, which contained a large bag containing a substance suspected of being marijuana, drug paraphernalia, "little baggies," and a small bottle containing "a couple of pills." Officer Long said that he did not question the Defendant and that the Defendant did not make any statements.

On cross-examination, Officer Long testified that before he approached the Defendant, the Defendant walked from the apartment building toward the white car, that the Defendant got inside the car, and that the Defendant left the car when Officer Long approached the car. Officer Long said he did not see anyone smoking marijuana. He identified a photograph of the items seized from the Defendant and the backpack, which included cash, a prescription medication bottle, a plastic Walmart bag containing a green leafy substance later identified as marijuana, a small bag containing what was later identified as marijuana, cigarette rolling papers, scales, and a driver's license. Officer Long said that

the small bag of marijuana was found on the Defendant and that the Walmart bag of marijuana was found inside the backpack.

Clarksville Police Officer Martin Spears testified that on August 26, 2016, Officer Long approached the white car outside the apartment complex and that Officer Long reported smelling marijuana. Officer Spears said that afterward, he detained "Mr. Grant," who had walked away from the car. Officer Spears said that after the Defendant ran, he saw a black backpack on the ground in front of the car and that he picked it up and placed it on the car.

On cross-examination, Officer Spears testified that he was at the scene for approximately one hour, that he stood near the car, and that he smelled burnt marijuana. He did not search the car.

Clarksville Police Detective David Bramel testified that at the time of the incident, he worked in the special operations unit of the narcotics division and that he interviewed the Defendant at the police station. He identified items found inside the backpack as a "rolling machine" used to make cigarettes and "joints," two packages of cigarette rolling papers, which he said were commonly used to "roll marijuana cigarettes," a prescription medication bottle, which he said contained two pills that were later identified as two-milligram alprazolam tablets, and digital scales, which he said were commonly used to weigh narcotics before being packaged for sale. He said that the amount of marijuana and the digital scales were indicative of possession for sale.

Detective Bramel testified that a plastic bag inside the backpack contained twenty smaller plastic "sandwich baggies" and that the small bags were "indicative of someone who would use sandwich bags for resale." He stated that a small bag contained what was later identified as 3.5 grams of marijuana. He said the marijuana in the Walmart bag was "not the way that users package their marijuana," had a "mid grade" quality, and weighed 61.89 grams, or slightly more than two ounces. He said that one ounce of this marijuana was valued for purchase between $100 and $125. He said that, generally, an ounce of marijuana was divided into "eight bags" containing 3.5 grams and sold for approximately $25 to $30 per bag. He said that the marijuana in this case could have sold for approximately $500.

Detective Bramel testified that the firearm possessed by the Defendant was a Taurus .380-caliber handgun and that it was loaded when Officer Long provided it to him at the police station. Detective Bramel recalled that one bullet was in the chamber and six bullets were in the magazine. He identified an extended magazine found inside the backpack and said the magazine contained ten .40-caliber bullets and had a twenty-nine round capacity. He identified a bag containing seven .380-caliber rounds and said the rounds were found loose inside the backpack. He identified the $490 cash in the Defendant's possession.

Detective Bramel testified that he asked the Defendant whether he was employed and that the Defendant said he did not know. Detective Bramel said that the Defendant initially admitted possessing the backpack, dropping the backpack when he ran from Officer Long, and possessing the firearm. Detective Bramel said the Defendant stated that the firearm was for protection and denied selling the marijuana. Detective Bramel said that the Defendant's cell phone was seized and that the Defendant admitted his phone would show incoming telephone calls and text messages "indicative of hi[s] selling [marijuana]." A video recording of the interview was played for the trial court.

In the recording, the Defendant denied selling but admitted using marijuana. Detective Bramel asked to look at the Defendant's cell phone in order to determine whether the Defendant had sent or received text messages indicating he sold drugs, and the Defendant admitted his phone would show communications regarding drugs. The Defendant declined to allow the detective to review the phone.

Detective Bramel testified that he obtained a search warrant for the Defendant's cell phone but that he was unable to access it because he did not have the passcode.

On cross-examination, Detective Bramel testified that he did not know how many people walked from the white car to the apartment complex, that the Defendant was the only person arrested, and that Officer Spears issued a misdemeanor citation. Detective Bramel said that three people were inside the car but denied that anyone inside the car was a confidential informant. He agreed that the three people inside the car were within reach of the backpack. He said that although the Defendant was carrying the backpack when everyone left the car, the backpack could have belonged to someone other than the Defendant.

Detective Bramel testified that the firearm was analyzed for fingerprints but that none were found and that none of the items inside the backpack were analyzed. He said that generally, one gram of tobacco or marijuana was contained in a cigarette "rolled" by a machine but that a cigarette could contain more if rolled by hand. He said that based upon the size of the cigarette papers found in the backpack, approximately 1.5 grams could have been used. He said that it was rare someone would possess approximately two ounces of marijuana for personal use but agreed it was possible. He agreed the Defendant denied selling marijuana and admitted smoking marijuana. Detective Bramel said that initially he thought the Defendant had taken an alprazolam before the police interview but that, after watching the recording, he thought the Defendant "was tired and just stressed about the situation." He said, though, it was possible the Defendant was "high."

-4-

On redirect examination, Detective Bramel testified that it was common for a person who sold drugs to use the drug being sold. He said that the Defendant admitted the backpack and firearm belonged to him. Detective Bramel clarified that the Defendant admitted possessing the backpack, not owning it.

Tennessee Bureau of Investigation (TBI) Agent Lela Jackson, an expert in forensic analysis, testified that the tablets contained in the prescription bottle were alprazolam, a controlled substance. She determined that the green leafy substance contained in the Walmart bag was marijuana and weighed 55.35 grams, or slightly less than two ounces. She did not analyze the smaller amount of the green leafy substance found on the Defendant. She agreed the amount from the Walmart bag weighed between 1.5 and 2 ounces.

Erica Evans, the Defendant's mother, testified for the defense that the Defendant was age twenty, lived with her, and worked at her husband's car detail shop. She said that the Defendant worked at the detail shop in the summer of 2016 and that "on a good day" employees earned approximately $100 plus tips. She said employees were paid cash daily. She did not have payroll records to present to the trial court.

Douglas Hoover, the Defendant's middle school football coach, testified that the Defendant never caused any problems. Mr. Hoover noted that the Defendant was soft-spoken, even when Mr. Hoover yelled at him and forced him to do pushups. Mr. Hoover said that he would not have been surprised to learn the Defendant was soft-spoken and quiet during a police interview.

The Defendant testified that he was age twenty and attended college. He said the backpack and the items inside the backpack belonged to him. He said he used the digital scales to ensure that the person from whom he bought marijuana did not "cheat" him. He admitted buying marijuana but denied selling it. He admitted the marijuana inside the backpack belonged to him and said he intended to smoke it. He said that he earned the cash found inside the backpack by working at the car detail shop. He did not recall any small bags being in the backpack and said he did not know why they were inside the backpack. He did not know if a magazine for a firearm was inside the backpack. He said that he had the firearm for protection from "people who just want revenge" and noted that his brother was shot and killed about one and one-half years before the trial and that several friends had died, too. The Defendant testified that he had a prescription for the alprazolam tablets.

On cross-examination, the Defendant testified that he did not have employment and prescription records to present to the trial court. He denied that the backpack contained a large amount of marijuana and said he paid approximately $100 for the marijuana. He said that he had just bought the marijuana and that he had saved the money he earned at the detail

shop. He agreed he did not know about the firearm magazine and small plastic bags found inside the backpack.

The trial court found that the parties did not dispute that more than fifty-five grams of marijuana were recovered and that, based upon Detective Bramel's testimony, this amount could render approximately fifty-five "joints." The court stated that it considered the permissible inference, based upon the amount of marijuana recovered, that it was possessed with the purpose of sale. The court also considered the Defendant's credibility. The court found the Defendant guilty of possession with the intent to sell or to deliver more than one-half ounce of marijuana and misdemeanor possession of alprazolam. Based upon the Defendant's admission, the court found him guilty of possession of a firearm with the intent to go armed during the commission of a dangerous felony. Based upon the cigarette rolling machine and digital scales inside the backpack and the Defendant's testimony, the court found the Defendant guilty of misdemeanor possession of drug paraphernalia. The court found the Defendant guilty of misdemeanor escape after determining that it was reasonable for the Defendant to assume he was in custody once the police "had a hold of the backpack." This appeal followed.

The Defendant contends that the evidence is insufficient to support his possession with the intent to sell or to deliver not less than one-half ounce nor more than ten pounds of marijuana and possession of a firearm during the commission of a dangerous felony. He concedes that he possessed marijuana and the firearm but argues that the State failed to show that he had the intent to sell or to deliver the marijuana. He asserts that, as a result, the firearm conviction must fail because the drug-related offense was the dangerous felony supporting the firearm conviction. He does not challenge his remaining convictions. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see also State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether

the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

## A.      Possession With the Intent to Sell or to Deliver

It is a crime to "[p]ossess a controlled substance with intent to . . . deliver or sell [a] controlled substance." T.C.A. § 39-17-417(a)(4). Delivery is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, whether or not there is an agency relationship." *Id*. § 39-17-402(6) (2014). A sale is "a bargained-for offer and acceptance, and an actual or constructive transfer or delivery" of the substance. *State v. Holston*, 94 S.W.3d 507, 510 (Tenn. Crim. App. 2002). Marijuana is a controlled substance. T.C.A. § 39-17-415(a)(1) (2018). Possession of marijuana with the intent to sell or to deliver is a Class E felony if the amount involved is not less than one-half ounce nor more than ten pounds. *Id*. § 39-17-417(g)(1).

Because the Defendant concedes he possessed the marijuana, our review is limited to whether sufficient evidence exists showing that the Defendant intended to sell or to deliver the marijuana. The evidence in the light most favorable to the State reflects that during the Defendant's encounter with the police, the Defendant dropped a backpack, which contained, in relevant part, a machine for rolling cigarettes, cigarette rolling papers, digital scales, approximately twenty small plastic sandwich bags, a large plastic bag containing slightly less than two ounces of marijuana, and almost $500. Detective Bramel testified that the digital scales were commonly used to weigh narcotics before being packaged for sale, that the small plastic bags were indicative of narcotics sales, and that the amount and packaging of the marijuana in the Walmart bag was not indicative of personal use. Likewise, Detective Bramel testified that, generally, marijuana was packaged in small plastic bags containing 3.5 grams, and the evidence showed the Defendant possessed a similar bag of marijuana at the time of his arrest. Detective Bramel testified that the marijuana in the Walmart bag weighed approximately 61.89 grams, or two ounces, and that, generally, an ounce of marijuana was divided into bags containing 3.5 grams and sold for approximately $25 to $30 for each bag. The marijuana in the Defendant's possession has a resale value of approximately $500. Detective Bramel stated that it was common for a person who sold drugs to use the drug being sold. During the police interview, the Defendant stated that he did not know if he was employed and that his cell phone would show incoming calls and text messages indicative of his selling marijuana. Although the Defendant denied selling marijuana and claimed the marijuana was for his personal use, the trial court's determination reflects that it discredited the Defendant's testimony. *See Bland*, 958 S.W.2d at 659. Based upon this evidence and upon the amount of marijuana seized, the trial court was permitted to infer that the marijuana was for the purpose of selling or delivery. *See* T.C.A. § 39-17-419 (2018). We conclude that the evidence is sufficient to support the Defendant's conviction for possession with the intent

-7-

to sell or to deliver not less than one-half an ounce nor more than ten pounds of marijuana. The Defendant is not entitled to relief on this basis.

## B.     Possession of a Firearm With the Intent to Go Armed

It is a crime "to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony." *Id*. § 39-17-1324(a). Dangerous felonies are delineated by our statutes and at the time of the incident, the felonies included possession with the intent to sell, manufacture, or distribute a controlled substance. *Id*. § (i)(1)(L).

The record reflects that after the Defendant's apprehension and arrest, Officer Long searched the Defendant and found a firearm under the Defendant's pants pocket near the right knee. Photographs of the firearm and ammunition were received as exhibits, and Detective Bramel testified that the firearm was loaded when he received it at the police station. The Defendant testified that he carried the firearm for protection. As we have stated, the Defendant was convicted of possession of marijuana with the intent to sell or to deliver, an enumerated dangerous felony. *See id*. We conclude that the evidence is sufficient to support the conviction. The Defendant is not entitled to relief on this basis.

The judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE