# IN THE SUPREME COURT OF TENNESSEE
## AT JACKSON
### April 5, 2005 Session

## STATE OF TENNESSEE v. AMY DENISE SUTTON

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Carroll County**
**No. 02CR-1984     Julian P. Guinn, Judge**

---

**No. W2003-01183-SC-R11-CD - Filed June 30, 2005**

---

We granted permission to appeal in this case pursuant to Tennessee Rule of Appellate Procedure 11 to determine the legality of the defendant's sentence. The defendant, Amy Denise Sutton,[1] was convicted by a jury of theft of property valued between $1,000 and $10,000. The trial court sentenced her to confinement for one year, followed by two years in community corrections. On appeal, she contends that because the length of her confinement exceeds her estimated release eligibility date of 10.8 months, her sentence is illegal. The defendant also challenges the sufficiency of the convicting evidence. Because we conclude that the defendant's release eligibility date is a mere possibility and not a right, we find the sentence to be valid. Further, we conclude that sufficient evidence was presented for a rational jury to convict the defendant of the charged offense. Accordingly, we affirm the judgment of the Court of Criminal Appeals.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

ADOLPHO A. BIRCH, JR., J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

Benjamin S. Dempsey, Huntingdon, Tennessee (on appeal); Guy T. Wilkinson, District Public Defender and Billy R. Roe, Jr., Assistant District Public Defender (at trial), for the appellant, Amy Denise Sutton.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Mark A. Fulks, Assistant Attorney General; Thomas E. Williams, III, Assistant Attorney General; G. Robert Radford, District Attorney General; and Eleanor Cahill, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The defendant's middle name is alternatively spelled "Deniece" and "Denise" throughout the record.

## Opinion

### I. Facts and Procedural History

The Grand Jury for Carroll County indicted the defendant for two counts of theft of property valued between $1,000 and $10,000, a Class D felony. Tenn. Code Ann. §§ 39-14-103, -105 (1997). On January 28, 2003, an order of nolle prosequi was entered as to one of the counts of theft. On that same day, the defendant was tried for the remaining count of theft.

At trial, Becky Raye Keith, a criminal investigator with the Carroll County Sheriff's Department, testified that on March 21, 2002, she and Roger Wood, another investigator, went to 7405 Highway 70, in Cedar Grove, to investigate the theft of a four-wheeler. The defendant's brother, Scott Wesley Sutton, and Sutton's fiancé, Wanda Maness, occupied that residence. While on the property, investigators located a "red Big Bear Yamaha" four-wheeler registered to Marshall K. Canady, who lived in Jackson.

Scott Sutton testified that several times over the course of three years, he had talked to the defendant about getting a four-wheeler. He recalled that about a week before Canady's four-wheeler was stolen, he had a conversation with the defendant during which the defendant stated that "she might know somebody" who could get a four-wheeler. Sutton testified that within a couple of weeks of the conversation, the defendant had a four-wheeler at her home. Sutton stated that he drove the four-wheeler home, but his testimony was unclear as to payment details. He read a portion of a previous statement in court in which he stated that the defendant had told him that she could get him a four-wheeler for $500. Sutton alternatively told the court that he got the four-wheeler from a person named Sam Rhodes. He acknowledged that he originally told investigators that he got the four-wheeler from the defendant.

Officer Anthony Ray Dickson testified that he was present during two interviews of Sutton, and on both occasions, Sutton claimed he got the four-wheeler from the defendant.

Maness testified that she was present when investigators searched her home on March 21, 2002, and located the stolen four-wheeler. She stated that Sutton obtained the four-wheeler from the defendant's house. Maness claimed that the four-wheeler came from Sam Rhodes.

Pamela Gaye Canady testified that she and her husband, Keith Canady, are the owners of the four-wheeler. She claimed that she did not give anyone permission to take the four-wheeler. Canady recalled that the couple had paid approximately $4,500 or $4,600 for the four-wheeler about a year prior and that it was still in good condition at the time it was stolen.

Roger Franklin Wood, a Criminal Investigator for the Tennessee Highway Patrol, testified that he, along with investigators Keith and Dickson, went to 7405 Highway 70 on March 21, 2002. He testified that he took sworn statements from Sutton and the defendant. According to Wood, the defendant, in her sworn statement, stated that she bought the four-wheeler from a man named

Michael Stanford for $500. Wood investigated the defendant's story, but he could not find any corroborating evidence.

The defendant testified that she received the four-wheeler from Sam Rhodes, a man that she was dating at the time. She claimed that she did not know the four-wheeler was stolen. The defendant testified that she lied in her original statement to investigators because she was trying to protect Rhodes.

At the conclusion of the trial, the jury found the defendant guilty of theft of property valued between $1,000 and $10,000. See Tenn. Code Ann. § 39-14-103 (1997). The judgment, however, is unclear as to the exact sentence imposed. It indicates that the defendant is to serve three years in the "TDOC" (Tennessee Department of Correction). Yet, it also indicates that the defendant is to receive a "Community Based Alternative" of two years, with "Service of 1 year and then Community Corrections." The judgment further indicates under "Special Conditions" that the defendant is to report to the Carroll County jail for service of her sentence. Finally, the judgment indicates that as a Standard Offender, the defendant has a release eligibility of 30%.

The defendant now appeals pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure, contending that her sentence is illegal because her sentence of confinement exceeds her release eligibility date and that insufficient evidence was presented to convict her of theft of property.

## II. Standard of Review

The defendant challenges the legality of her split-confinement sentence. In reviewing sentencing issues, this Court shall conduct a de novo review of the record. Tenn. Code Ann. § 40-35-401(d) (2003). "Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Id.

The defendant also challenges the sufficiency of the convicting evidence. Our standard of review is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original); State v. Goodwin, 143 S.W.3d 771, 775 (Tenn. 2004). This standard is the same whether the conviction is based upon direct or circumstantial evidence. State v. Carruthers, 35 S.W.3d 516, 557 (Tenn. 2000). When reviewing the evidence, "the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." State v. Smith, 24 S.W.3d 274, 279 (Tenn. 2000). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence. State v. Evans, 108 S.W.3d 231, 236 (Tenn. 2003).

## III. Analysis

-3-

A. Legality of Sentence

The defendant's primary contention is that her sentence of confinement for one year is illegal because it exceeds her release eligibility date of 10.8 months.[2] In order to properly address the defendant's complaint, we must first determine the actual sentence imposed by the trial court. Unfortunately, the judgment form in this case is not clear. In the "[s]entenced to" section of the form, the box labeled "TDOC" is checked, and a sentence of three years is written beside it. However, all other language on the document indicates that the defendant is sentenced to one year incarceration followed by two years community corrections. The judgment not only indicates that the defendant is to receive a "Community Based Alternative" of two years, but it also contains handwritten language stating that the sentence should include "[s]ervice of 1 year and then Community Corrections." Thus, we conclude, as did the Court of Criminal Appeals, that the trial court imposed a three-year community corrections sentence, including a one-year period of confinement. We conclude further that any reference to the TDOC was erroneous.

The State contends that the defendant's sentence is proper because the release eligibility statute, by its own terms, applies only to sentences of incarceration; the State insists that a sentence involving community corrections is not a sentence of confinement to which release eligibility dates apply.

We conclude that the release eligibility statute does not apply to a community corrections sentence. First, we note the obvious–that the release eligibility statute and the community corrections statute are in different chapters of the code. In fact, this Court has previously acknowledged that "community corrections is a distinctly different sentencing scheme than probation." Carpenter v. State, 136 S.W.3d 608, 611 (Tenn. 2004). Further, one of the purposes of the release eligibility statute is to reduce overcrowding in jails. See Tenn. Code Ann. § 40-36-104(4) (2003). Sentences which are solely performed in a community corrections program do not involve a period of confinement and thus do not affect the overcrowded conditions in the state prison system. Therefore, to the extent that a sentence of community corrections does not include confinement, we conclude that the release eligibility statute does not apply.

We do, however, note an exception to the general rule when community corrections sentences are coupled with a period of confinement. Where an offender is sentenced to a period of confinement in conjunction with a period of community corrections, the release eligibility statute would apply. The statute governing release eligibility status provides that "[a] felony sentence to the department of correction or to a local jail or workhouse shall be served according to this chapter." Tenn. Code Ann. § 40-35-501(a)(1) (2003). This language is broad enough to include all periods of incarceration, regardless of the fact that they may be coupled with community corrections.

---

[2]We note that the release eligibility date issue arises only with sentences of three years or less. If the sentence is more than three years, then the release eligibility date would be more than one year which can be served in the local jail or workhouse as part of a split-confinement sentence. See Tenn. Code Ann. § 40-35-306(a) (2003).

-4-

Despite the application of the release eligibility dates to terms of confinement, we conclude that the defendant's sentence is proper. The crux of the defendant's argument is that her confinement sentence of one year exceeds her release eligibility date of 10.8 months. Through such an argument, the defendant seems to equate her release eligibility date to her actual release. However, a defendant has no right to a conditional release prior to the expiration of a valid sentence of confinement. Greenholtz v. Inmates of the Neb. Penal and Corr. Complex, 442 U.S. 1, 7 (1979); Daniels v. Traughber, 984 S.W.2d 918, 924 (Tenn. Ct. App. 1998); see also Tenn. Code Ann. § 40-35-503(b) (2003) (stating that "[r]elease on parole is a privilege and not a right"). A protected liberty interest in parole exists only where the statute creates an expectation of parole. See Greenholtz, 442 U.S. at 11. We conclude that Tennessee Code Annotated section 40-35-501 (2003), the statute addressing parole eligibility dates, does not provide a certainty of parole for sentences greater than two years. Rather, it simply "provides no more than a mere hope that the benefit will be obtained." Greenholtz, 442 U.S. at 11. Thus, the defendant has no "right" to be released on parole after 10.8 months in confinement.

We do, however, note that where there is specific language in a statute indicating that a defendant shall be released upon reaching the release eligibility date, there is more than a mere hope of release. Such is the case for sentences of two years or less. Tennessee Code Annotated section 40-35-501(a)(3) (2003), provides that "[n]otwithstanding any other provision of law, inmates with felony sentences of two (2) years or less shall have the remainder of their original sentence suspended upon reaching their release eligibility date." Thus, in sentences of two years or less, defendants have more than a mere hope of release. Instead, they have a right, based on Tennessee Code Annotated section 40-35-501(a)(3) (2003), to have the remainder of their sentence suspended upon reaching their release eligibility date. There is no corresponding right for sentences of more than two years, as is the case here.

## B. Sufficiency of the Evidence

The defendant also challenges the sufficiency of the convicting evidence. Specifically, she contends that the evidence was insufficient because it was entirely circumstantial and did not exclude other reasonable theories. "A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). "A conviction may be based entirely on circumstantial evidence where the facts are 'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). Before an accused may be convicted of a criminal offense based upon circumstantial evidence, the facts and the circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant, and that beyond a reasonable doubt." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

The defendant in this case was convicted of theft of property valued between $1,000 and $10,000. "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective

consent." Tenn. Code Ann. § 39-14-103 (1997). In the present case, Ms. Canady testified that she and her husband owned the four-wheeler at issue and that they had not given anyone permission to borrow it. Investigator Keith testified that the stolen four-wheeler had been recovered at the home of the defendant's brother, Scott Wesley Sutton. Sutton testified that he had obtained the four-wheeler from the defendant's home. He further testified that he and the defendant had previously discussed his desire to have a four-wheeler. Based on those facts, it is evident that even if the defendant did not steal the four-wheeler, she did exercise control over it. Further, the jury could have inferred that the defendant knew that the four-wheeler was stolen because she admitted that she was trying to protect her boyfriend when she lied to the police. Based on the foregoing, we conclude that sufficient evidence was presented to convict the defendant of theft of property valued between $1,000 and $10,000.

In addition, although the defendant argues that the evidence presented was purely circumstantial, it is apparent from the record that the defendant's statements, the four-wheeler itself, and its possession by the defendant are more in the nature of direct evidence.

## IV. Conclusion

Accordingly, we affirm the judgment of the trial court. It appearing that the defendant, Amy Denise Sutton, is indigent, costs are taxed to the State of Tennessee, for which execution may issue if necessary.

_____
ADOLPHO A. BIRCH, JR., JUSTICE