IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 15, 2017

**STATE OF TENNESSEE v. MICHAEL JAMES AMBLE**

Appeal from the Criminal Court for Loudon County
No. 14-CR-264      Michael S. Pemberton, Judge
_____

No. E2016-02495-CCA-R3-CD
_____

Defendant, Michael James Amble, was indicted by the Loudon County Grand Jury on one count each of DUI; DUI, multiple offenses; refusal of implied consent; driving while license cancelled, suspended, or revoked; possession of drug paraphernalia; speeding; and registration violation. Following a jury trial, Defendant was found guilty of DUI and driving on a suspended license, and the jury found him not guilty of possession of drug paraphernalia. Following a bifurcated hearing, the jury found Defendant guilty of second offense DUI. The trial court found that Defendant violated the implied consent law, and the remaining offenses were dismissed on motion of the State. Following a sentencing hearing, Defendant was sentenced to 11 months and 29 days with all but 45 days suspended. In this appeal as of right, Defendant contends that: 1) the trial court erred by not granting his motion for judgment of acquittal with respect to the charge of possession of drug paraphernalia; and 2) that the evidence at trial was insufficient to sustain his conviction for DUI. Having reviewed the entire record and the briefs of the parties, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROBERT L. HOLLOWAY, JR., JJ., joined.

Ian McCabe, Knoxville, Tennessee, for the appellant, Michael James Amble.
Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Russell Johnson; District Attorney General; and Joe Caldwell, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *Facts*

On July 20, 2013, Christopher Hutchens, of the Loudon County Sheriff's Office, initiated a traffic stop of Defendant's vehicle because Defendant was driving 53 miles-per-hour in a 45 mile-per-hour zone. When Officer Hutchens approached Defendant's vehicle, he noticed an odor of alcohol. He also observed that Defendant's speech was slurred, and Defendant's eyes were bloodshot. Officer Hutchens asked Defendant to step out of his vehicle. Officer Hutchens administered three field sobriety tests. Officer Hutchens testified about the results of only two of the tests. Prior to the tests, he asked Defendant if he had a medical condition that would prevent him from performing the tests, and Defendant responded that he did not.

Officer Hutchens demonstrated the "walk and turn" test for Defendant. Officer Hutchens testified that Defendant's performance on the test "did not meet the standard of someone who would not be impaired." He testified that Defendant could not keep his balance during the instructional phase. He testified that Defendant "performed it completely wrong the first time [and he] allowed [Defendant] to receive the instructions again and try to perform it a second time. Officer Hutchens testified, "[m]y conclusion based singly on that test would be that he was driving impaired." Officer Hutchens also had Defendant perform the one-leg stand test. He testified that Defendant exhibited several clues indicating impairment, including raising his hands, hopping and putting his foot down, and swaying.

A dash cam video recording of the incident was presented to the jury. Officer Hutchens testified that while he was attempting to stop Defendant's vehicle, Defendant "crossed over the center line when negotiating [a] cur[ve], hit the rumble strip and then actually comes back out." Regarding the quality of the video, Officer Hutchens testified "July weather is starting to take over and starting to condensate inside – on the outside of the vehicle." Acknowledging that the quality of the video was poor, Officer Hutchens described Defendant's performance of the field sobriety tests. He testified that during the nine-step walk and turn test, Defendant "raised his arms for balance and he stepped off the line." During the one-leg stand, Defendant "swayed to a degree that [he] felt for [Defendant's] safety not to continue any further on to 30 seconds."

Officer Hutchens placed Defendant under arrest and read the implied consent form to him and asked Defendant to submit to a blood alcohol test. Defendant refused to sign the form and refused to take a blood test. Officer Hutchens testified that he arrested Defendant "based . . . on the totality of the entire incident, so from the time that [he]

observed him speeding all the way up until the moment [he] determined to make the arrest."

Officer Hutchens asked Defendant for consent to search his vehicle, and Defendant consented. Officer Hutchens testified that he found a pipe used to smoke marijuana in the center console of Defendant's vehicle.

Matthew Kalthoff testified for Defendant. He testified that he met Defendant approximately five years prior when Defendant worked for Brogan Excavating. He testified that they had become very close friends. On July 19 or July 20, 2013, Mr. Kalthoff loaned Defendant his Chevy Tahoe. Defendant had helped him work in the yard and on vehicles earlier in the day. Mr. Kalthoff provided a six-pack of beer for Defendant and Mr. Kalthoff's brother to share. Mr. Kalthoff testified that he saw Defendant drink three beers. He also testified that Defendant "drank a ton of water" and that he did not leave until "well after two hours" after he had stopped consuming alcohol.

Mr. Kalthoff testified that Defendant left his house between 2:30 and 3:00 a.m., and that Defendant's home was approximately 15 minutes away. Defendant called him that night and told him about being pulled over for speeding. Mr. Kalthoff testified that he had seen Defendant impaired before, and he was "[a]bsolutely not" impaired when he left his house on that morning.

Mr. Kalthoff testified that the marijuana pipe that was found inside the vehicle belonged to him and that he smokes marijuana for his medical conditions. He testified that he and Defendant had smoked marijuana together in the past, but Defendant did not smoke marijuana the night he was arrested.

Defendant did not testify or present any other evidence.

*Analysis*

*Drug paraphernalia charge*

Defendant contends that the trial court erred in denying his motion for judgment of acquittal as to the drug paraphernalia charge because, Defendant asserts, the "[e]vidence produced at trial merely established that the Defendant was within the vicinity" of the drug paraphernalia found in the vehicle. The State responds that the issue is moot and that this court lacks subject matter jurisdiction because Defendant was acquitted of that charge. We agree with the State.

Rule 3(b) of the Tennessee Rules of Appellate Procedure limits subject-matter jurisdiction over appeals of right by defendants in criminal actions to appeals lying from "any judgment of conviction entered by a trial court . . . ." Tenn. R. App. P. 3(b). Defendant does not have an appeal as of right under Rule 3(b) because he was acquitted on the drug paraphernalia charge. Furthermore, an issue is moot upon acquittal. See *McCanless v. Klein*, 188 S.W.2d 745, 747 (Tenn. 1945) (an issue will be considered moot if it no longer serves as a means to provide some sort of relief to the party who may prevail or if it no longer presents a present, live controversy.).

In a related issue, Defendant contends that he was prejudiced by the trial court's denial of his motion for judgment of acquittal "since it potentially opened the door for additional impeachment of a defense witness." Specifically, Defendant argues that the trial court's denial of his motion for judgment of acquittal as to the paraphernalia possession charge allowed the State to cross-examine the defense witness about Defendant's prior marijuana use. The State, in its brief, fails to respond to this issue.

On cross-examination, Mr. Kalthoff testified that he and Defendant had smoked marijuana together in the past, but that he did not smoke marijuana with Defendant on the night Defendant was arrested. He testified, "obviously I would have taken that pipe out [of the vehicle] if I had any idea that it was in there." He also testified, "I know for a fact that I did not smoke with [Defendant] that evening." Defense counsel made no objection to this testimony.

Defense counsel's argument in support of his motion for judgment of acquittal was based on the State's failure to introduce into evidence the marijuana pipe that Officer Hutchens testified he found inside the vehicle. The trial court addressed the issue as follows:

> I likewise am concerned that the alleged instrument that constituted drug paraphernalia is not here. The officer did testify that he found it and that he smelled it and that it smelled of marijuana and I think he testified commonly associated with marijuana. And I think taking the proof in the light most favorable to . . . the [S]tate at this point in time I'm not going to grant the motion at this point in time. However, I am not saying that I'm going to let that charge go to the jury, okay. I may or may not. I've got to think about that a little bit more. But not having the instrument here that constitutes drug paraphernalia poses a – makes it substantially more difficult for the defense to address that issue because drug paraphernalia as even defined in the jury charge really is an intent based crime because there's any number of objects that could qualify as drug paraphernalia depending upon one's intent as to how they intended

to use it. But for the time being I'm going to overrule your motion, but I'm not yet saying that I will allow the drug paraphernalia charge to go to the jury.

At the close of Defendant's proof, the trial court addressed the issue as follows:

Let's talk about his drug paraphernalia charge at this point. Obviously we now have confirmation that there was a pipe there and that it was a marijuana pipe. We have the defendant driving the vehicle that has the pipe in it.

. . . .

I agree that whoever's pipe that it was or whoever was in possession of it, but the problem that I'm having is that this charge is an intent based charge.

The trial court noted that Mr. Kalthoff "waffled" in his testimony about whether Defendant smoked marijuana on the night of his arrest, and the court concluded, "I'm going to charge it and then we'll deal with it depending upon the verdict." Defense counsel did not raise at trial the particular issue that he raises on appeal, which is that he was prejudiced by the trial court's denial of his motion for judgment of acquittal because the jury heard proof of his prior use of marijuana.

The jury's acquittal of Defendant on the drug paraphernalia charge does not render the evidentiary issue moot. Proof of Defendant's use of marijuana was not presented until Defendant's case was presented following the State's case-in-chief. With the paraphernalia charge still in play, Defendant's use of marijuana with the defense witness was at least marginally relevant as to whether Defendant unlawfully possessed the alleged drug paraphernalia. However, if the drug paraphernalia charge had been dismissed at Defendant's motion after the close of the State's proof, the evidence would not be relevant for that purpose. Defendant presents an interesting and unique issue, but because he failed to object to the testimony about his prior marijuana use (at least as to lack of relevancy in the DUI case), or ask for an instruction to the jury that the evidence was not relevant to the DUI case, the issue is waived. *See* Tenn. R. App. P. 36(a) (appellate relief generally unavailable when party "failed to take whatever action was reasonably available to prevent or nullify the harmful effect of any error."); *State v. Schieffelbein*, 230 S.W.3d 88, 118 (Tenn. Crim. App. 2007) ("The failure to make a contemporaneous objection constitutes a waiver of the issue on appeal."). Defendant is not entitled to relief on this issue.

- 5 -

*Sufficiency of the evidence*

Defendant contends that the evidence at trial was insufficient to sustain his conviction for driving under the influence. In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

Under Tennessee Code Annotated section 55-10-401, it is unlawful for the driver of a vehicle to be "[u]nder the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess." T.C.A. § 55-10-401(a)(1).

Defendant argues that low quality of the officer's dash cam video renders the evidence insufficient to sustain his DUI conviction. Defendant points to the officer's testimony that "[i]t is in the morning hours of July so condensation within the vehicle does create a little bit of a haze over the vehicle, but [the video] is still viewable. You can still see his – most of his field sobriety." Defendant also points to the trial court's comment at the hearing on his motion for new trial that "[the court] will admit that the video was not the best video in the world and was at times grainy – and not outstanding. But that that, coupled with the actual testimony of the officer as to what he observed of the Defendant in terms of his relative state of intoxication, was sufficient for the jury to find [Defendant] guilty."

The State introduced into evidence an audio and video recording of Defendant's field sobriety tests. This court has reviewed the video. The video recording shows from the initial stop of Defendant's vehicle through his arrest. While Officer Hutchens was searching Defendant's vehicle, condensation began forming on the windshield of the patrol car. Between the condensation on the windshield and the glare from the headlights and the officer's flashlight, it is difficult to see Defendant's performance of the field sobriety tests. However, our review of the video substantially corroborates Officer Hutchens' testimony. Even without a video of the stop, however, the evidence is sufficient to support Defendant's conviction. Officer Hutchens testified that he smelled an odor of alcohol when he approached Defendant's vehicle, and that Defendant's speech was slurred and his eyes were bloodshot. Based on his training and experience, Officer Hutchens believed that Defendant was intoxicated. Officer Hutchens conducted field sobriety tests, and he testified that Defendant performed poorly on the tests. The proof in the light most favorable to the State shows that Defendant operated his vehicle while under the influence of an intoxicant. Defendant is not entitled to relief.

CONCLUSION

Based on the foregoing, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, PRESIDING JUDGE

- 7 -