IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE

Assigned on Briefs January 24, 2019

## STATE OF TENNESSEE v. KENNETH DEMARCUS WILLIAMS

**Appeal from the Criminal Court for Knox County**
**No. 105047      G. Scott Green, Judge**

_____

### No. E2018-00086-CCA-R3-CD

_____

The Defendant, Kenneth Demarcus Williams, was convicted by a Knox County Criminal Court jury of two counts of facilitation of aggravated burglary, a Class D felony, two counts of aggravated burglary, a Class B felony, two counts of aggravated assault, a Class B felony, two counts of possession of a firearm during the commission of a dangerous felony, a Class D felony, and unlawful possession of a firearm while being a convicted felon, a Class C felony. *See* T.C.A. §§ 39-14-403 (2018) (aggravated burglary); 39-11-403 (2018) (facilitation of a felony); 39-13-102 (2018) (aggravated assault); 39-12-302 (2018) (felony classification when acting in concert); 39-17-1324 (2018) (possession of a firearm during dangerous felony); 39-17-1307 (2018) (unlawful firearm possession). After the appropriate merger, the trial court sentenced the Defendant to terms of confinement of four years for facilitation of aggravated burglary, twelve years for aggravated burglary, twelve years for aggravated assault, five years for possession of a firearm during the commission of a dangerous felony, and ten years for unlawful possession of a firearm. The court imposed partial consecutive service, for an effective sentence of twenty-one years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his facilitation of aggravated burglary convictions and (2) the trial court erred by admitting photograph evidence. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Gerald L. Gulley, Jr. (on appeal) and Mitch Harper (at trial), Knoxville, Tennessee, for the appellant, Kenneth Demarcus Williams.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to the June 13, 2014 and November 2, 2014 burglaries of LaKendra Porter's homes in Knox County, Tennessee. At the trial, Ms. Porter testified that she was age twenty-nine and that she and the Defendant grew up together. She said that their respective grandmothers were close friends and referred to each other as sisters. Ms. Porter said that she generally knew Deandre Marsh and Dekendrick Gadeson from the neighborhood. She denied "hanging out" with the Defendant, Mr. Marsh, and Mr. Gadeson in June 2014 and said that she focused on bettering herself and that she "let the street life just be over in the street life." She said that the Defendant, Mr. Marsh, and Mr. Gadeson would have had no reason to be inside her home.

Ms. Porter testified that in 2014, her mother, Tina Berry, lived mostly with Ms. Porter's grandmother. Ms. Porter said that on June 13, 2014, she lived with her two children, who were ages one and six, and that her brother stayed periodically at her home. She said that on June 13, she, her children, her mother, her cousin, and her cousin's two children, who were ages five and three, returned to her grandmother's home after shopping and that she saw the Defendant, Mr. Marsh, and Mr. Gadeson together. Ms. Porter said that her mother drove her mother's car, that her mother parked the car behind Mr. Gadeson's Chrysler car, and that she saw the Defendant, Mr. Marsh, and Mr. Gadeson get into Mr. Gadeson's car. Ms. Porter saw a fourth person inside the car but could not identify the person. She said that the Defendant and Mr. Marsh got in the backseat of Mr. Gadeson's car.

Ms. Porter testified that she, the children, and her mother went inside her grandmother's house, that she and the children stayed for about fifteen or twenty minutes, and that she and the children left in her mother's car to go home. Ms. Porter said that as she drove home, she saw Mr. Gadeson's car and that she wondered why the men were in her neighborhood because she knew the men did not know anyone who lived there. Ms. Porter said that she called her mother and that Ms. Porter saw the men before they saw her because the driver "hit [the] brakes" immediately after passing her car. She said that she was only 300 feet from her home when she saw the men, that she drove past her home because she did not want the men to know where she lived, that she drove around the block, and that she saw the Defendant hiding behind a "thin" tree in her front yard. She said that the Defendant wore a black, blue, and white shirt and that he wore the same shirt when she saw him near her grandmother's home. She said that she saw the Chrysler pull into her driveway and saw Mr. Marsh and Mr. Gadeson run from the side of her

-2-

home to the Chrysler. She said that she "punched it," continued driving, and called the police.

Ms. Porter testified that she met the police at her home and that her home had been "demolished." She recalled that the sofa pillows and paper from her shredder had been strewn about the home, that food was scattered everywhere, that photographs and televisions were removed from the walls, that her children's clothes were scattered throughout the home, and that her home was generally messy. She said that two of her televisions and a computer were beside the door. She said that after sorting through the debris, she realized her daughter's Galaxy 3 tablet was missing, that it had been a Christmas present, and that it had cost more than $500. Ms. Porter said that although she did not move immediately after the incident, she obtained her handgun carry permit and bought a gun for protection. She said that her life had not been the same since the incident and that she did not go anywhere without her gun.

Ms. Porter identified photographs of her home taken after the June 2014 incident. Photographs showed disturbed sofa cushions, shredded paper on the living room floor, a television lying on an ottoman, food strewn about the kitchen floor, and a laptop lying on a kitchen chair. She said that her son's laundry hamper was found in the kitchen, although it had been in her son's bedroom. Additional photographs showed the bedrooms in disarray and televisions removed from wall mounts. She identified a photograph of the living room and stated that a blanket had been placed partially inside the fireplace and that a pile of children's clothes had been placed beside the fireplace. She stated that she did not give the Defendant, Mr. Marsh, and Mr. Gadeson permission to enter her home or to take her daughter's tablet.

Ms. Porter testified that she and her children moved to a new home in October 2014, that a security system was installed at the home, that sensors were located at the front and back doors and at the living room window, and that a camera was positioned inside the home to capture images of the back door. Ms. Porter stated that on November 2, 2014, she and her son went to bed around midnight, after her brother and sister-in-law left. She said that around 1:00 a.m. she heard four kicks at the door. She said that she grabbed her gun and that by the fourth or fifth kick, the door "came in," triggering the security alarm. She said that she ran to the stairway, that she leaned over the stairway with her gun pointed down the steps, and that she saw the Defendant "leaning over the stairway with his gun pointed up." She said that the Defendant "hurried up and dialed it back" when he saw her, that she heard "some chatter," and that she attempted to fire her gun. She said that the gun's chamber was empty and that she began screaming hysterically and beating the walls in an effort to alert her neighbors. She said that she pulled back the hammer and fired it once but that nobody was there by this time. She said that she did not move until the police arrived. She could not determine the number of people inside her home but said that she saw the Defendant and heard voices downstairs. She said that she retrieved the security system footage on her cell phone and

that "bam, there he was." A recording of a 9-1-1 call placed by a security system representative was played for the jury.

Ms. Porter said that, after the June 13 incident, she identified Mr. Marsh and Mr. Gadeson in photograph lineups and provided police statements in which she said that she saw Mr. Marsh and Mr. Gadeson leaving her home, that neither man had permission to be in her home, that "they" entered the home through a bathroom window, and that the tablet had been stolen. Ms. Porter said that, after the November 2, 2014 incident, she identified the Defendant in a photograph lineup and provided a police statement in which she said that the Defendant broke into her home and pointed the gun at her when she was at the staircase and that the Defendant was the person in the security system footage. She said that she also identified the Defendant as the person who stood outside her previous home by the tree on June 13.

Ms. Porter identified photographs taken of her home on November 2, 2014, which depicted the partially open and shattered glass back door, which she identified as the back door. A photograph taken from inside the home showed interior damage to the doorframe. Photographs also showed the stairs upon which Ms. Porter stood during the incident. Ms. Porter identified the Defendant in a photograph obtained from the security system footage. The photograph showed another person, whose face was not visible, standing behind the Defendant, but Ms. Porter could not identify the person. She identified a blurry photograph obtained from the security system footage of a person and stated that she knew the person in the photograph was Lawrence Smith because she had grown up with him and saw "him with this big bubble jacket on and all that hair." Ms. Porter said that Mr. Smith was the Defendant's uncle. She stated that multiple Facebook postings assisted her in identifying Mr. Smith from the blurry photograph.

Ms. Porter testified that during the November 2014 incident, she did not know what to do or what the Defendant intended to do. She said she panicked, fired her gun, and feared for her life. She said that "they" broke into her home and that the Defendant had a gun when he walked up the steps. She said she did not give the Defendant and Mr. Smith permission to enter her home.

On cross-examination, Ms. Porter testified relative to the November 2014 incident that a telephone call did not wake her. She said she had been asleep about two hours when she awoke to the sound at the back door. She said that the stairwell light was on when she saw the Defendant looking up at her, that she saw the Defendant holding a gun, and that the gun looked like the type carried by police officers and was black. She said that her weapon was a .380-caliber semi-automatic handgun.

Ms. Porter testified relative to the June 2014 incident that she knew the Defendant was the person standing behind the tree in her yard but that she did not initially see Mr. Gadeson's car. She said that after she circled around a couple of times, she saw the car in

-4-

her driveway. She said that although she saw Mr. Marsh and Mr. Gadeson running from the side of her home to the Chrysler, she did not see the Defendant. She said that on June 15, she saw Mr. Marsh, who "flashed" a gun at her while she was at her grandmother's home.

Tina Berry, Ms. Porter's mother, testified that on June 13, 2014, she parked her car behind an aqua-colored Chrysler 300 outside her mother's home. She said that she saw the Defendant and two other men get in the Chrysler and that the car drove away. She said that Ms. Porter left with the children and that Ms. Porter called her about twenty-five minutes later. Ms. Berry said she called 9-1-1 to report that someone was breaking into Ms. Porter's home. Ms. Berry said that she drove Ms. Porter's car to Ms. Porter's home and that the police were at the home when she arrived. On cross-examination, Ms. Berry stated that she told the 9-1-1 operator that "Mook Mook Marsh" and the Defendant, whom she referred to as "Kenny Boo Williams," were involved in the incident. The recording of the 9-1-1 call was played for the jury.

Knoxville Police Lieutenant Savannah Ayub testified that on June 15, 2014, she was stopped by Ms. Porter, who reported that "Mook Mook Marsh" lifted up his shirt and displayed a gun to Ms. Porter when he was in front of Ms. Porter's grandmother's home. Lieutenant Ayub said Ms. Porter stated that Mr. Marsh had been involved in a break-in at her home. Lieutenant Ayub said that they did not find Mr. Marsh in the area but that Ms. Porter was scared.

Knoxville Police Investigator Timothy Thornton testified that he worked in the property crimes unit at the time of the incidents in this case. Relative to the June 2014 incident, he said that he spoke to the victim a couple of days after the incident and that Ms. Porter identified the men she saw by nicknames. Investigator Thornton said that Mook Mook was Mr. Marsh, that Trez was Mr. Gadeson, and that Kenny Boo was the Defendant. Investigator Thornton said that Ms. Porter identified Mr. Marsh and Mr. Gadeson in photograph lineups. Investigator Thornton said he was unable to obtain a photograph of the Defendant at this time because he had difficulty identifying the Defendant's full name. Investigator Thornton said, though, he was able to identify the Defendant's name after the November 2014 incident. Investigator Thornton said that Ms. Porter identified the Defendant from a photograph lineup as the third person involved in the June 2014 incident.

Former Knox County Sheriff's Investigator Matt Sexton testified that on November 2, 2014, he responded to Ms. Porter's home and that the back door had been kicked open, causing damage to the door and to the doorframe. Mr. Sexton saw a bullet hole in the wall near the front door. He said that Ms. Porter retrieved footage from her home security system and identified the Defendant as one of the persons inside her home.

Knox County Sheriff's Officer Chris Beeler testified that he responded to Ms. Porter's home, that he entered the home through the back door, and that he saw shattered glass and damage to the doorframe. He said that a couple of kitchen drawers were open and that a bullet hole was in the wall near the stairs.

The parties stipulated that before November 2, 2014, the Defendant had a previous felony conviction that involved the use of a deadly weapon. The judgments of conviction from 2008 and 2009 were received as exhibits and reflected that the Defendant had been convicted twice of being a convicted felon in possession of a handgun.

Upon this evidence, the Defendant was convicted of two counts of facilitating an aggravated burglary in concert with two or more persons, two counts of aggravated burglary in concert with two or more persons, two counts of aggravated assault in concert with two or more persons, two counts of possession of a firearm during the commission of a dangerous felony, and unlawful possession of a firearm while being a convicted felon. This appeal followed.

## I.     Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his facilitation of aggravated burglary convictions related to the June 13, 2014 incident. He argues that the evidence only showed that the Defendant "[sat] in an automobile while two other people went and burglarized" Ms. Porter's home and "arguably[] took the computer 'tablet.'" He does not challenge his remaining convictions. The State responds that the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn.

2009)).  A conviction may be based upon circumstantial evidence alone.  *See Dorantes*, 331 S.W.3d at 380-381.

As relevant to the present case, aggravated burglary is defined as "burglary of a habitation[.]"  T.C.A. § 39-14-403(a).  "A person commits burglary who, without the effective consent of the property owner . . . [e]nters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft, or assault[.]"  *Id*. § 39-14-402(a)(1) (2018).  Habitation is defined as "any structure . . . designed or adapted for the overnight accommodation of persons[.]"  *Id*. § 39-14-401(1)(A) (2018).  Owner is "a person in lawful possession of property whether the possession is actual or constructive."  *Id*. § 39-14-401(3).  "A person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony."  *Id*. § 39-11-403(a); *see id*. § 39-11-402(2) (2018) (criminal responsibility for the conduct of another).

The record reflects in the light most favorable to the State that on June 13, 2014, Ms. Porter and Ms. Berry saw the Defendant, Mr. Marsh, Mr. Gadeson, and an unidentified man inside Mr. Gadeson's Chrysler, which was parked outside Ms. Porter's grandmother's home.  The Chrysler drove away just before the women went inside Ms. Porter's grandmother's home.  Approximately twenty minutes after seeing the Chrysler leave, Ms. Porter drove home.  While driving in her neighborhood, she saw Mr. Gadeson's Chrysler.  Ms. Porter said that none of the men knew anyone who lived in her neighborhood and thought that their presence was odd.  Ms. Porter was approximately 300 feet from her home when she saw the Chrysler, and she drove around the block because she did not want the men to know where she lived.  After driving around the block, Ms. Porter saw the Defendant hiding behind a tree in her front yard, the Chrysler pull into her driveway, and Mr. Marsh and Mr. Gadeson run from the side of her home to the Chrysler.  Ms. Porter drove away from her home but returned after the police arrived.  Ms. Porter's home was in disarray.  The sofa cushions had been disturbed, shredded paper and food had been strewn about the home, televisions had been removed from wall mounts and placed near the door, a computer had been placed near the door, blankets had been partially inserted into the fireplace, children's clothes had been strewn about the home, and a tablet was missing from the home.

We conclude that the evidence is sufficient to support the convictions for facilitation of aggravated burglary.  The Defendant, Mr. Marsh, Mr. Gadeson, and the fourth person left Ms. Porter's grandmother's neighborhood and drove to Ms. Porter's home.  Although the Defendant argues that the proof only showed that he sat inside a car while others committed a burglary, Ms. Porter saw the Defendant hiding behind a tree in her yard just before Mr. Gadeson's Chrysler pulled into her driveway and Mr. Gadeson and Mr. Marsh ran from the side of Ms. Porter's home.  From this evidence, the jury

could have determined that the Defendant knew Mr. Marsh and Mr. Gadeson intended to commit a theft and that the Defendant furnished the men substantial assistance by acting as a lookout from Ms. Porter's yard while Mr. Marsh and Mr. Gadeson entered her home. The Defendant is not entitled to relief on this basis.

## II.    Photographs

The Defendant contends that the trial court erred by admitting photographs that were not provided to the defense until five days before the trial, which was approximately eleven months after the State's discovery materials were provided to the defense. The State responds that the trial court did not err by admitting the photographs.

On May 9, 2016, the Defendant filed a motion to exclude "undisclosed/late disclosed evidence" in which he sought to prohibit the State from introducing photographs obtained from Ms. Porter's security system that showed the Defendant inside the home on November 2, 2014. The motion stated that the prosecutor told counsel on Friday, May 6, 2016, at 5:22 p.m., that a disc containing photographs was at the front desk of the district attorney's office. The motion stated that counsel picked up the disc on Monday, May 9, at 8:00 a.m., that the disc contained sixty-two photographs, including five or six photographs of the intruder, and that counsel's first opportunity to review the photographs with the Defendant was forty-eight hours before the trial. The motion requested the court determine whether the photographs should be excluded as evidence or whether a continuance should be granted.

At the May 10, 2016 motion hearing, the prosecutor stated that she contacted the sheriff's office on Thursday evening, that someone from the sheriff's office brought her a disc, and that she made a copy of the disc on Friday for defense counsel. The prosecutor noted that the photographs were of Ms. Porter's home and that Ms. Porter testified at the preliminary hearing about the June 2014 burglary. The prosecutor argued that the photographs were not "a surprise." Counsel stated that one photograph from the security camera was provided during discovery and conceded that whether a burglary occurred might not be an issue at the trial. Counsel argued, though, that the four or five additional photographs obtained from the security system showed the "individuals breaking in" the home and that the day before the motion hearing was the first opportunity for counsel and the Defendant to view the additional photographs.

The prosecutor stated that she provided in the discovery materials a photograph depicting the Defendant and "the guy behind him." Defense counsel agreed that this photograph was provided during discovery. The relevant photographs were "others . . . [in] the same sequence." The trial judge asked how the additional photographs "add to the equation," and counsel said that the photographs were "clearly different." The judge noted that the photographs depicted the same person and that he saw no difference between the photograph provided in the discovery materials and the additional

photographs. Counsel maintained that the lighting and the view of the person's face were different in each photograph. The court determined that although the defense received the additional photographs late, the photographs were "just different versions of the identical photograph" already provided in the discovery materials. The court stated that if counsel had not received the single photograph during the discovery process, the "scenario would be different." The court noted that "it's not like the first one shows him wearing a hoodie and then the next one is showing without, or whoever the person is. They all look the same to me." The court denied the motion.

As a preliminary matter, the photographs that were the subject of the motion are not identified in the record. However, the prosecutor identified the photograph contained in the discovery materials as the photograph showing the Defendant and "the guy behind him." Defense counsel conceded that the photograph was provided during the discovery process. During the trial, two photographs from the security system were received as exhibits. The first photograph depicted a man, who wore a light-colored hooded sweatshirt and whose face was fully visible. Ms. Porter identified the man as the Defendant at the trial. This photograph also showed a second person, whose face was not visible, standing behind the Defendant. The person wore a light-colored hooded sweatshirt, but Ms. Porter could not identify the person. The record reflects that the defense did not seek to prohibit the State from introducing this photograph.

The second photograph admitted at the trial depicted a blurry image of a person. The person's face was not visible, but the photograph showed that the person wore a shirt, sweatshirt, or jacket that was mostly dark in color. Ms. Porter identified this person as Mr. Smith, the Defendant's uncle. Because this is the only additional photograph admitted at the trial, our review is limited to whether the trial court abused its discretion by permitting the State to introduce it.

The Defendant generally argues on appeal that admission of the photograph was prejudicial because it provided corroborative evidence of the Defendant's involvement in the November 2014 burglary and because he "was not able on two days['] notice to prepare to defend against the additional, late-disclosed photograph[]." Regarding the corroborative nature of the photograph, Ms. Porter did not identify the Defendant as the person shown in the blurry photograph. Rather, Ms. Porter identified Mr. Smith in the photograph. The photograph provided in the discovery materials depicting the Defendant inculpated the Defendant in the aggravated burglary and corroborated Ms. Porter's testimony that she saw the Defendant inside her home. Regarding the lack of adequate time to prepare a defense to the blurry photograph, the motion hearing occurred on May 10, 2016, and the trial occurred on July 25 and 26, 2016. The Defendant had more than two months to prepare a defense to the blurry photograph, which as we have previously stated, based upon witness testimony, did not depict the Defendant. As a result, we conclude that the trial court did not abuse its discretion by permitting the State to introduce the photograph. The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____

ROBERT H. MONTGOMERY, JR., JUDGE