IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

## STATE OF TENNESSEE v. JIM GEORGE CONASER

**Appeal from the Criminal Court for Davidson County**
**No. 2018-D-2522    Steve R. Dozier, Judge**

_____

### No. M2020-01354-CCA-R3-CD

_____

The Defendant, Jim George Conaser, was convicted by a Davidson County Criminal Court jury of aggravated assault with a deadly weapon, a Class C felony, for which he is serving a twelve-year sentence as a Range III, persistent offender. *See* T.C.A. § 39-13-102(a)(1)(A)(iii) (Supp. 2017) (subsequently amended). On appeal, he contends that the evidence is insufficient to support his conviction and that the trial court erred in admitting hearsay evidence. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Brian Love, Nashville, Tennessee, for the Appellant, Jim George Conaser.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Jeffrey George and J. Wesley King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's conviction relates to an assault against the victim, who testified at the trial that she lived near a convenience store where homeless individuals congregated. She said that she tried to help homeless people by taking food to them and that she had allowed the Defendant, whom she knew as "Jimbo," and another person, whom she knew as "One-eyed Mike," to stay in her home during bad weather. She said that years before the events relevant to this case, she had barred the Defendant from returning to her house.

The victim testified that she had brain damage and that she was a domestic violence survivor. She said she was fearful of "get[ting] hit again" because it might cause her to

lose memory and have to be placed "in a home." She said that she could walk but that she used a wheelchair because she fell frequently. She said the brain injury had affected her memory in the past but that it no longer affected her memory.

The victim testified that on May 12, 2018, she encountered the Defendant at McDonald's. She said the Defendant was with another man and that the Defendant asked to go to her house to shower and shave. She said she told the Defendant that he could not come to her house and that he had almost caused her to be evicted.

The victim testified that she pulled into an alley behind a convenience store to check on and take food to "Ms. Brandy," who at the time had recently been in the hospital. The victim said she saw One-eyed Mike, "[C]heeseburger," and "Brick" in the alley. She agreed that she knew them and said she had not been afraid of them when she entered the alley. She said the Defendant arrived and threw lettuce and pickles from a Big Mac at Cheeseburger, took off his boots, and put a sock on his arm. She said "Next thing I know, I got a weapon point up – go like that (demonstrating)." She described the weapon as a "metal piece." She said the Defendant put a sock on his arm, waved the metal piece in her face "on and on and on," and said he was going to kill her. She said she was "terrified" and jumped up from her wheelchair and began walking away to avoid being hit. She said she was afraid the Defendant would hit her head. She said that she called 9-1-1 and that she returned to get her wheelchair after she was on the 9-1-1 call and after the Defendant sat down. She described the Defendant as "[d]runk" and "angry" when he swung the pipe at her.

The victim identified an audio recording of the 9-1-1 call, and the recording was played for the jury. In the recording, the victim reported that a homeless man "pulled a steel rod on" her and was going to hit her with it. A male voice on the recording, whom the victim identified as that of the Defendant, stated, "Tell the police, I'm going to hit her in the g------ mouth." The Defendant also said, "We don't like you." The victim said the Defendant was "violent" and stated she was going to the fire hall. The victim stated that she was a domestic violence survivor, that she would not be harmed again by a man, and that she wanted to prosecute the Defendant.

The victim testified that after the Defendant waved the pipe in her face, he put it in "the burn barrel." She said that when police officers arrived, she told one where to find the pipe and the sock the Defendant had worn on his hand. She said the Defendant was seated when the officers arrived and that she was not nearby and able to hear what he may have said to the officers.

The victim identified photographs of the alley and the barrel, and the photographs were received as exhibits. The victim said that both One-eyed Mike and Brandy had died since the incident.

-2-

Metro Nashville Police Officer Yunus Adak testified that he responded to the call about the incident in this case. He said that when we arrived at the alley, he saw the victim in her wheelchair with a friend standing nearby. He agreed that other people were nearby. He said the victim was upset. Officer Adak said he arrested the Defendant. Officer Adak said the Defendant had been "very angry, appeared to be intoxicated, cursed, and was uncooperative." Officer Adak said he had been concerned, based upon the Defendant's demeanor, that the Defendant might become aggressive. Officer Adak said that when he asked the Defendant, who was lying down, to stand, the Defendant cursed at him more than five times. Officer Adak said the Defendant continued to curse at him after Officer Adak arrested the Defendant.

Officer Adak testified that the victim showed him where to find a bent metal rod and a white sock, which he collected as evidence and which were received as exhibits. He thought the rod and sock were the only items in the trash can, other than ashes. He said he questioned witnesses on the scene but did not photograph the victim or the Defendant. He said he did not request surveillance footage from the convenience store.

The Defendant elected not to present evidence.

The jury found the Defendant guilty of aggravated assault with a deadly weapon. After the trial court imposed the twelve-year, Range III sentence, the Defendant filed the present appeal.

# I

## Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to support his conviction of aggravated assault with a deadly weapon. "A person commits aggravated assault who . . . [i]ntentionally or knowingly commits an assault . . . and the assault . . . [i]nvolved the use or display of a deadly weapon[.]" T.C.A. § 39-13-102(a)(1)(A)(iii) (Supp. 2017) (subsequently amended). "A person commits assault who . . . [i]ntentionally or knowingly casues another to reasonably fear imminent bodily injury[.]" *Id.* § 39-13-101(a)(2) (Supp. 2017) (subsequently amended). "Anything that in the manner of its use or intended use is capable of causing death or serious bodily injury" is considered a deadly weapon. T.C.A. § 39-11-106(a)(6) (2014) (subsequently amended).

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521

(Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

The Defendant argues that the State failed to show that the victim reasonably feared imminent bodily injury, that the victim was in danger of imminent bodily injury because evidence did not establish the Defendant possessed the pipe when he threatened to kill the victim, and that the victim was not a credible witness.

Viewed in the light most favorable to the State, the evidence shows that the Defendant waved a pipe in the victim's face and threatened to kill her. The victim feared that the Defendant was going to hit her head, and she stood from her wheelchair to get away from him before calling 9-1-1 for assistance. This court has held that a pipe used to hit a victim was a deadly weapon. *State v. Donald Lynn Miller*, No. E1999-00148-CCA-R3-CD, 2001 WL 72250, at *4 (Tenn. Crim. App. Jan. 30, 2001), *perm. app. denied* (Tenn. May 1, 2006). The victim's testimony showed that she feared imminent bodily injury and that her fear was based upon reasonable grounds given the circumstances. To the extent that the Defendant attacks the victim's credibility as being unreliable due to her brain injury, her memory issues, and her alleged failure to remove herself from the situation, it is not the function of this court to reassess witness credibility. *Bland*, 958 S.W.2d at 659; *see Sheffield*, 676 S.W.2d at 547. The jury heard the evidence, observed the witnesses, and credited the victim, as was the jury's province as the trier of fact.

The evidence is sufficient to support the conviction. The Defendant is not entitled to relief on this basis.

## II

## Hearsay Evidence

The Defendant contends that the trial court erred in admitting hearsay evidence. He argues that the victim's testimony that Brandy, who was deceased at the time of the trial,

would have corroborated the victim's testimony, and Officer Adak's testimony that an unidentified witness at the scene corroborated the victim's account of the incident were inadmissible hearsay.

The Defendant failed to object to the victim's testimony that Brandy would have corroborated her account of the incident and failed to raise the issue in the motion for a new trial. The issue is waived. *See* T.R.A.P. 3(e).

The Defendant promptly objected to Officer Adak's testimony that an unidentified witness corroborated the victim's account of the incident, and the trial court sustained the objection and told the jury to disregard the officer's testimony. A jury is presumed to follow the court's instructions. *State v. Jordan*, 325 S.W.3d 1, 55 n.12 (Tenn. 2010).

The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE